STATE OF NORTH CAROLINA v. JAMES RICHARD FOX

No. 7311SC281

(Filed 27 June 1973)

1. Witnesses § 1— competency of nine-year-old to testify

The trial court in a murder prosecution did not err in allowing a nine-year-old to testify where the court conducted a *voir dire* in the absence of the jury and then concluded that the witness had sufficient intelligence and knowledge to give evidence.

2. Homicide § 30— death by shooting — failure to submit involuntary manslaughter — no error

Where the State's evidence tended to show that defendant, who earlier "had been in a bad mood," shot and killed his sister as she was about to climb the steps to the house, but defendant's evidence tended to show that he entered his home to obtain his gun for the purpose of killing a snake and that he killed his sister when the gun discharged as he was coming out of the door of the house, the trial court did not err in failing to submit to the jury the possible verdict of involuntary manslaughter.

APPEAL by defendant from *Braswell, Judge,* 23 October 1972 Session of LEE County Superior Court.

Defendant was charged in an indictment with the first-degree murder of Vera Davis Hooker. At trial the State elected to try defendant for murder in the second degree or manslaughter as the jury might find. Counsel for defendant was furnished by the State, and defendant entered a plea of not guilty.

Briefly summarized, the evidence for the State tended to show the following:

On 22 July 1972, defendant James Richard Fox was living with his mother, Lula Davis Fox, and his sister, Vera Davis Hooker, the deceased. At approximately 6:00 a.m. that day, defendant went next door to check on his sister-in-law, Geraldine Fox, as he usually did before leaving for work. After staying a

short while defendant left and Geraldine went to her bedroom. She then heard a shot and went outside and observed the body of Vera Davis Hooker lying on the steps of defendant's house. Defendant went out his front door holding a shotgun in his hand and left the premises. He soon returned to Geraldine's house where he tried unsuccessfully to flag down a passing motorist. He then went into Geraldine's house and said he wanted to report that he had killed his sister. He then phoned the police and reported the shooting.

Anthony Hooker, great-nephew of defendant and grandson of deceased, was also staying in defendant's house and testified that he was looking through a window early that morning and saw the deceased go to a utility house and put up a lawn mower. As deceased came back and was about to climb the steps to the house, the defendant opened the door and shot her. Anthony then went to a neighbor's house and reported the incident to his mother.

It was reported that earlier that morning at approximately 2:00 a.m. defendant had been in a bad mood. Betty Hooker, a niece of defendant who also lived in the same house testified that "[f]or four months he had been raising cain, morning, noon and night when he didn't go to work, fussing at everybody and carrying on and drinking."

Officers from the Lee County Sheriff's Department soon arrived and after advising defendant of his rights, placed him under arrest. On cross-examination, Deputy Holt testified that defendant came to their car as they arrived and said, "[c]ome on I have shot her, she is around on the porch and it was an accident."

Defendant then took the stand in his own behalf and testified as follows:

"My mother was sitting on the back porch and I came out to talk to my mother. Vera was out burning garbage just out by the house. Me and my mother were talking on the porch. She said to me 'There goes a snake.' I saw the snake. I came back in the room where I sleep and gets the gun, a single barrel gun. That looks like part of it over there. I came outside, came through the door, I opened the screen door and when I opened the screen door the gun went off and my sister was coming up the steps. I did not intend to shoot my sister.", and "It accidentally went off."

On cross-examination he further stated:

"I did not notice whether the hammer was cocked or not when I came out of the house. The gun stayed loaded. I would not keep such a gun with the hammer pulled back in a cocked position. I had to cock the gun in my coming out of the house. I wouldn't say that when I shot the gun it was pointed directly at the chest of Vera Davis Hooker. I don't even know where she was shot at. All I know is the gun went off."

On State's rebuttal to defendant's evidence, Vera Hooker Watson, mother of Anthony Hooker, testified that upon learning of the shooting from her son, she attempted to call the rescue squad. She picked up the party line phone and overheard defendant talking to the rescue squad. She asked defendant to get off the line and let her call, and she stated that he told her, "he had killed one and did I want him to get me too."

The jury found defendant guilty of second-degree murder. From a judgment imposing an active sentence of 22 years, defendant appealed.

*Attorney General Morgan, by Assistant Attorney General Rich, for the State.*

*Love and Ward, by Jimmy L. Love, for defendant appellant.*

MORRIS, Judge.

[1] In his first assignment of error, defendant contends that it was improper for the trial court to allow State's witness, Anthony Hooker, age 9, to testify after his competency as a witness had been challenged. We do not agree.

Upon defendant's objection the trial court conducted a voir dire examination in the absence of the jury and upon being asked why he placed his hand on the Bible before testifying, Anthony Hooker stated, "[S]o to tell the truth." The trial court then concluded that the witness had sufficient intelligence and knowledge to give evidence. In *State v. Turner*, 268 N.C. 225, 230, 150 S.E. 2d 406 (1966), where the competency of a nine-year-old was in issue, the following was stated:

"There is no age below which one is incompetent, as a matter of law, to testify. The test of competency is the capacity of the proposed witness to understand and to relate under

the obligation of an oath facts which will assist the jury in determining the truth of the matters as to which it is called upon to decide. This is a matter which rests in the sound discretion of the trial judge in the light of his examination and observation of the particular witness."

In the case at hand, as in *State v. Turner, supra,* there is nothing in the record to indicate an abuse of discretion in permitting the child to testify.

[2]   We next examine defendant's contention that the trial court erred in failing to submit to the jury involuntary manslaughter as a permissible verdict. The trial judge did instruct that the jury could return one of three possible verdicts: (1) Murder in the second degree, (2) voluntary manslaughter, or (3) not guilty. Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Foust,* 258 N.C. 453, 128 S.E. 2d 889 (1963). Voluntary manslaughter is the unlawful killing of a human being without malice and without premeditation or deliberation. *State v. Wynn,* 278 N.C. 513, 180 S.E. 2d 135 (1971). Clearly there was sufficient evidence to support the trial court's instructions on these possible verdicts.

Involuntary manslaughter however has been defined as the unintentional killing of a human being without malice, premeditation or deliberation, which results from the performance of an unlawful act not amounting to a felony, or not naturally dangerous to human life; or from the performance of a lawful act in a culpably negligent way; or from culpable omission to perform some legal duty. *State v. Rummage,* 280 N.C. 51, 185 S.E. 2d 221 (1971).

> " 'Culpable negligence in the law of crimes is something more than actionable negligence in the law of torts . . . Culpable negligence is such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others.' (Citations omitted.)" *State v. Early,* 232 N.C. 717, 720, 62 S.E. 2d 84 (1950).

Defendant testified that the shooting was purely accidental, and our examination of the record reveals no evidence that the gun was handled so recklessly as to constitute culpable negligence. " 'Where the death of a human being is the result of

---

---

accident or misadventure, in the true meaning of the term, no criminal responsibility attaches to the act of the slayer . . .' (Citation omitted.)" *State v. Faust*, 254 N.C. 101, 112, 118 S.E. 2d 769 (1961). Upon defendant's evidence the trial court properly charged the jury as follows:

> "Or if you are simply satisfied that at the time the defendant acted in the manner complained of that the discharge of the shotgun was accidental then it would become your duty to return a verdict of not guilty, for it is the law where a shotgun is discharged accidentally though held in the hands of the defendant it is not done intentionally or in the manner described to you under the charge of murder in the second degree or voluntary manslaughter, then the defendant would not be guilty of any offense and it would be your duty to acquit him."

The trial court properly charged the jury as to the law arising upon the evidence, and the absence of any instruction as to involuntary manslaughter was not error. Also, there was clearly enough evidence to take the case to the jury and withstand defendant's motion to dismiss. In the trial below, we find

No error.

Judges BROCK and PARKER concur.