STATE OF NORTH CAROLINA v. ANDRA VENCENTA RAY

No. COA00-1511

(Filed 5 March 2002)

**1. Homicide— short-form indictment—first-degree murder— felony murder**

A short-form murder indictment under N.C.G.S. § 15-144 is sufficient to allege first-degree murder under theories of premeditation and deliberation and felony murder.

**2. Evidence— cross-examination—statement by defendant— not basis of opinion testimony**

Defendant had no right to cross-examine a trooper regarding a statement defendant made about how a crash in which the victim was killed occurred where the trooper testified that defendant's statement did not represent a basis for his opinion testimony at trial.

**3. Evidence— lay opinion—wounds not consistent with accident**

The trial court did not err in a prosecution for a robbery and murder which was discovered after an automobile accident by overruling defendant's objection to a detective's testimony that lacerations on the victim's hand were not consistent with a traffic accident. The detective was offering a lay opinion based on his

personal observations at the scene and his investigative training as a police officer; moreover, the medical examiner testified that the lacerations were consistent with defensive wounds.

### 4. Homicide— first-degree murder—lesser included offenses—instruction not required

The trial court did not err in a prosecution for a first-degree murder arising from a robbery by not instructing on the lesser included offenses of second-degree murder and involuntary manslaughter. The robbery and the murder constituted a continuous transaction which led to felony murder and there was no evidence to support instructions on either lesser offense.

### 5. Kidnapping— purpose of restraint—allegation unsupported by evidence

The trial court erred by denying defendant's motion to dismiss a kidnapping charge where the indictment alleged that defendant restrained the victim for the purpose of causing serious bodily harm, the evidence showed that defendant restrained the victim only for the purpose of facilitating an armed robbery, and defendant's cutting of the victim with a utility knife was the means rather than the purpose of the restraint.

Judge GREENE concurring in part and dissenting in part.

Appeal by defendant from judgments entered 3 March 2000 by Judge Orlando F. Hudson, Jr., in Harnett County Superior Court. Heard in the Court of Appeals 27 November 2001.

*Attorney General Roy Cooper, by Assistant Attorney General Thomas G. Meacham, Jr., for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Charlesena Elliott Walker, for defendant appellant.*

McCULLOUGH, Judge.

Defendant Andra Vencenta Ray was tried before a jury at the 7 February 2000 Criminal Session of Harnett County Superior Court after being charged with one count of first-degree murder, one count of first-degree kidnapping, and one count of robbery with a dangerous weapon. Evidence for the State showed that around 3:00 p.m. on the afternoon of 10 December 1998, Carolina Power and Light (CP&L) employees Larry Whitley and Ronnie Fincher were traveling north on

MacArthur Road in Harnett County when Whitley saw a red pickup truck stopped in the middle of the road facing north. As Whitley looked on, the driver's door swung open; the truck then sped off with the driver's door still open.

Although the pickup truck began accelerating and moving erratically, Whitley was able to see two occupants inside. Because the force should have closed the open driver's door, Whitley thought it must have been lodged open. Whitley and Fincher, who were driving at a speed between forty-five and fifty miles per hour, lost sight of the truck for five to seven seconds as it rounded a curve. When they saw the truck again, it had wrecked, and dust was still blowing in the air.

When Whitley and Fincher made it to the accident site, they saw an elderly white man lying on the ground, apparently dead, and a black man running back down the road in the direction from which the truck had just come. The elderly victim was later identified as Mr. Kyle Archie Harrington, an eighty-seven-year-old resident of Harnett County. The black man, whom Whitley and Fincher identified at trial as defendant, ran along the road for about one hundred yards, then turned into the woods. Defendant was described as "dusty dirty," shoeless, and had blood on his face. According to Fincher, defendant was wearing a light-colored jacket with writing or a stripe down his sleeve.

Another witness, Greg Batten, testified that he observed the pickup truck at approximately 3:15 p.m. on 10 December 1998, while he was traveling south on MacArthur Road. Batten saw the pickup truck traveling at approximately seventy to seventy-five miles per hour with the driver's door open. The truck initially drove on Batten's side of the road but returned to its own lane as it neared Batten's car. Batten saw an elderly white male driving and a younger black male in the passenger seat. Batten testified that the two appeared to be struggling for control of the truck's steering wheel. The young black man was seated in the middle of the seat and was reaching over toward the driver's area of the pickup truck. No other vehicles were in the immediate vicinity. These observations were made by Mr. Batten within a matter of seconds, after which the truck disappeared out of sight. Batten then called the highway patrol on his cell phone to warn of a possible wreck.

Robin Moore, who lived in a mobile home adjacent to MacArthur Road, testified that around 3:30 p.m. on 10 December 1998, defendant

STATE v. RAY

[149 N.C. App. 137 (2002)]

came to his house. Moore stated that defendant was wearing a pullover sweatshirt, but had no shoes on. He also stated that defendant had blood around his nose, and had broomstraw in his hair and on his clothes. Defendant told Moore he and a friend were going to the victim's home to get haircuts; however, on the way, two black men had run them off the road. Defendant explained that these men were now beating his friend, and defendant had gone to call for help. Defendant also told Moore he had ridden his bike over to the victim's home earlier that day. Moore called 911, and defendant waited approximately fifteen minutes for the police to arrive.

Agent Eddie Jaggers, a narcotics agent with the Harnett County Sheriff's Office, was patrolling near MacArthur Road when he heard about an accident nearby. Agent Jaggers went to the accident site, checked on Kyle Harrington's condition, then got information about a black male who ran away from the scene. Agent Jaggers ascertained defendant's whereabouts and picked defendant up at Moore's home. Jaggers searched and handcuffed defendant and took him back to the accident site. Once there, Agent Jaggers turned defendant over to Detective Richard Hendricks.

Danny Tadlock was a paramedic with Harnett County Emergency Medical Services. He assisted at the accident site on MacArthur Road on 10 December 1998. Mr. Tadlock examined defendant, whose face was scratched. When asked what happened, defendant told Tadlock a black vehicle had run the pickup truck off the road and both he and Harrington were thrown from the truck. Afterwards, defendant said, he had run for help.

The State also called State Highway Patrolman Mark Smith to testify, over defendant's objections, as an expert in accident reconstruction. Trooper Smith went to the accident site and observed various tire impressions and tire marks and noted extensive damage to the truck's left front quarter panel and to the driver's door. There was no damage to the rear, top, or right side of the truck. The windshield and back glass were intact, but the window on the driver's side was broken out. Dirt, debris, pine needles, and branches were in the interior of the truck and blood-like stains were on the padded center of the steering wheel. Two hiking boots were found on the floorboard.

Based on the physical findings at the accident site, Trooper Smith expressed an opinion on the direction in which the truck was traveling and stated his belief that Harrington was ejected from the truck

on the driver's side. Trooper Smith offered no opinion as to how the accident occurred. He merely testified to having prepared a limited reconstruction of the accident based on the report by the investigating officer, the field sketch of measurements taken at the scene, and a statement defendant made to the police as to how the truck crash came about.[1] When asked if he had relied on defendant's statement as a basis for any opinion expressed during his testimony, Trooper Smith answered, "Absolutely not."

Detective Hendricks of the Harnett County Sheriff's Office testified that, upon arriving at the accident site, he examined Harrington's body and noted lacerations "that were not consistent in [his] opinion with a traffic accident." The lacerations were "more defined as smooth in nature." After observing these wounds, Detective Hendricks searched the truck for anything that could have caused the lacerations. Detective Hendricks found a bloody box cutter (the utility knife) on the floorboard of the truck; at that point, the focus of the investigation changed from a traffic accident to a homicide investigation. Other than blood on the windshield on the passenger side of the truck, the police did not find any glass with blood on it.

Dr. John Butts, the Chief Medical Examiner for the State of North Carolina, was tendered as an expert in the field of forensic pathology. Dr. Butts performed the autopsy on Kyle Harrington on 11 December 1998. Dr. Butts determined Harrington died from massive blunt force injuries, instantly fatal and consistent with impact injuries from a vehicle accident. Dr. Butts also noted one cut at the bottom of Harrington's neck, two on his jaw, and several on the back of his right hand toward the wrist, which were made by a sharp object capable of cutting the skin cleanly, possibly a utility knife. Dr. Butts added that it was hard to distinguish cuts from a particular instrument, including glass. Dr. Butts opined that the cuts on Harrington's hands were "consistent with defensive wounds."

The State also called Mr. Kelly Harrington, the victim's son, to testify. Mr. Harrington testified that he learned of his father's death shortly after it happened. When he was told that the investigating officers suspected foul play, Mr. Harrington went to look around his father's house. As he pulled into his father's yard, Mr. Harrington noticed a bicycle, which did not belong to his father, lying on its side.

---

1. Upon the State's motion *in limine*, the trial court prohibited defense counsel from referring to the substance of this statement.

Mr. Harrington also noticed that the door to the crawl space was open and the water hose was hooked up, with the water spigot on. Mr. Harrington stated his father's house was locked and there were no signs of a struggle inside the house. He also conceded that it was not unusual for his father to give someone a ride.

Mr. Harrington testified his father normally carried his wallet and between $200.00 and $600.00 with him. Mr. Harrington's wallet was not found on his person or at the accident site. On 10 January 1999, a month after the accident occurred, Harrington's friends and family organized a search for Harrington's wallet, concentrating on the area they believed defendant had run from immediately after the accident. In a swampy area amidst thick briars, broomstraw, and vines, they found a white jacket, Mr. Harrington's wallet, and several of his personal papers.

Defendant was employed through Mid-Carolina Temporary Services as a material handler. As such, he had access to utility knives of the type found in the truck. On 10 December 1998 at approximately 10:00 a.m., defendant received his weekly paycheck in the amount of $135.13 and left work about thirty minutes later, though his normal workday lasted until 4:30 p.m.

Later testimony from Detective Hendricks showed that $446.00 was found on defendant when he was processed, including four one hundred dollar bills, even though the inventory list prepared by Hendricks at that time stated the four one hundred dollar bills were found in the truck. The State also elicited testimony from the tenants of Mr. Harrington's two rental homes. Each tenant testified they recently paid Mr. Harrington their rent using two one hundred dollar bills.

The State's final witness was Special Agent David Freeman of the State Bureau of Investigation, who testified as an expert in the field of forensic DNA analysis. He stated the DNA banding pattern from blood on the utility knife found in the truck and blood on defendant's pants matched the DNA profile of the victim and did not match defendant's DNA profile.

The trial court instructed the jury on first-degree kidnapping, robbery with a dangerous weapon, and first-degree murder in the perpetration of a robbery with a dangerous weapon. The jury found defendant guilty of all three counts and recommended that he be sentenced to life in prison without parole for the first-degree murder conviction.

The trial court noted that the jury convicted defendant of first-degree murder solely on the theory of felony murder, and therefore arrested judgment on the robbery with a dangerous weapon conviction. The trial court further ordered that defendant serve a term of life imprisonment without parole for the first-degree murder conviction, followed by 125-159 months' imprisonment for the kidnapping conviction. Defendant appealed.

On appeal, defendant argues the trial court committed error by (I) denying his motion to dismiss and his motion to set aside the verdict on the grounds that defendant received insufficient notice of the State's intent to try him for felony murder; (II) (A) declining to allow defendant to cross-examine Trooper Smith about a prior statement by defendant that had been excluded under a motion *in limine*, (B) overruling defendant's objection to Detective Hendricks' opinion testimony that the lacerations on the victim's hands were not consistent with a traffic accident; (III) denying defendant's motion for an instruction on second-degree murder and involuntary manslaughter; and (IV) denying defendant's motion to dismiss the kidnapping charge. For the reasons set forth herein, we reverse defendant's kidnapping conviction, but find no merit to his other arguments.

## I. The Indictment

[1] By his first assignment of error, defendant argues the trial court should have granted his motion to dismiss and his motion to set aside the verdict because the short-form murder indictment provided defendant with insufficient notice of the State's intent to try him for felony murder and thus violated his due process rights. This argument fails in light of our Supreme Court holdings that have routinely recognized the short-form murder indictment under N.C. Gen. Stat. § 15-144 (1999) as sufficient to allege first-degree murder under theories of both premeditation and deliberation and felony murder. *See, e.g., State v. Davis*, 353 N.C. 1, 44-45, 539 S.E.2d 243, 271 (2000), *cert. denied*, — U.S. —, 151 L. Ed. 2d 55 (2001); *State v. Leroux*, 326 N.C. 368, 378, 390 S.E.2d 314, 322, *cert. denied*, 498 U.S. 871, 112 L. Ed. 2d 155 (1990); *State v. Brown*, 320 N.C. 179, 191, 358 S.E.2d 1, 11, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987); *State v. Avery*, 315 N.C. 1, 14, 337 S.E.2d 786, 793 (1985). Based on our Supreme Court's clearly delineated position regarding the validity of the short-form murder indictment, defendant's first assignment of error is overruled.

## II. Evidence

### A. Trooper Smith's Testimony

**[2]** The trial court granted the State's pretrial motion *in limine* to prohibit defense counsel from referring to the substance of a statement defendant made to the police in which he explained how the crash came about.[2] Defendant now contends the trial court improperly denied his request to cross-examine Trooper Smith about this statement when Trooper Smith based his opinion testimony in part on defendant's statement. We disagree.

Data underlying an expert's opinion is a proper subject for cross-examination if it is relied upon by the testifying expert. *State v. McCarver*, 341 N.C. 364, 398, 462 S.E.2d 25, 44 (1995), *cert. denied*, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996). This is so because the statement of an opinion without its basis would impart a meaningless conclusion to the jury. *State v. Wade*, 296 N.C. 454, 463, 251 S.E.2d 407, 412 (1979). Consequently, disclosure of the basis of an opinion is essential to the jury's assessment of the credibility and weight which it is to be given. *State v. Jones*, 322 N.C. 406, 412, 368 S.E.2d 844, 847 (1988).

In this case, Trooper Smith testified that he prepared a limited reconstruction of the accident based on the report by the investigating officer at the accident site, the field sketch of measurements taken at the scene, and a statement defendant made to the police. At no time, however, did Trooper Smith make a statement as to how the accident occurred. Trooper Smith's remaining testimony covered his observations at the accident site and his opinions, based upon those observations, as to the direction in which the truck was traveling and the manner in which the victim was ejected from the truck. The prosecutor then asked the following question:

Q. Trooper Smith, did you consider or rely upon the statement of the defendant just shown to you in forming any of the opinions about which you testified in the presence of the jury earlier this afternoon?

A. Absolutely not.

---

2. Defendant assigned as error the trial court's grant of the State's motion *in limine*. As this assignment of error is not discussed in defendant's brief, it is deemed abandoned under N.C.R. App. P. 28(b)(5) (2000).

Thus, defendant's statement did not represent a basis for Trooper Smith's opinion testimony at trial, and defendant had no right to cross-examine Trooper Smith regarding the statement. *See McCarver*, 341 N.C. at 398, 462 S.E.2d at 44. We therefore conclude the trial court acted properly in denying defendant's motion to cross-examine Trooper Smith in regard to defendant's statement.

## B. Detective Hendricks' Testimony

**[3]** Defendant also contends the trial court erred in overruling his objection to Detective Hendricks' opinion testimony that the lacerations on Harrington's hand "were not consistent . . . with a traffic accident," because Detective Hendricks was not qualified as a medical expert under Rule 702 of the North Carolina Rules of Evidence. The State, however, did not tender Detective Hendricks as an expert witness. Detective Hendricks offered a lay witness opinion based on his personal observations at the scene and his investigative training background as a police officer. *See* N.C. Gen. Stat. § 8C-1, Rule 701 (1999) (lay witness may testify as to "those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue"); *see also State v. Rich*, 132 N.C. App. 440, 512 S.E.2d 441 (1999), *aff'd*, 351 N.C. 386, 527 S.E.2d 299 (2000) (police officer permitted to give lay witness opinion based on past experience and his encounter with the defendant). Even if inclusion of Detective Hendricks' opinion testimony was erroneous, it would be harmless error in light of Dr. Butts' expert testimony that the lacerations on Harrington's hand "were consistent with defensive wounds" and could have been caused by the utility knife. Thus, the trial court properly overruled defendant's objection to Detective Hendricks' testimony.

## III. Jury Instructions

**[4]** By his third assignment of error, defendant argues the trial court erred in denying his motion to instruct the jury on the lesser offenses of second-degree murder and involuntary manslaughter, because the instructions were supported by the indictment and the evidence presented at trial. After careful consideration of the entire record, we do not agree.

It is well settled that "[a] trial court must give instructions on all lesser-included offenses that are supported by the evidence[.]" *State v. Lawrence*, 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000), *cert. denied*,

531 U.S. 1083, 148 L. Ed. 2d 684 (2001). Failure to do so amounts to "reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense." *Id.* The trial court may decline to submit the lesser offense to the jury if "the State's evidence is positive as to each element of the crime charged" and there is no "conflicting evidence relating to any of [the] elements." *Leroux*, 326 N.C. at 378, 390 S.E.2d at 322.

The jury returned a guilty verdict for first-degree murder after having been instructed that it could so find if defendant killed Harrington in the perpetration of robbery with a dangerous weapon. "A killing is committed in the perpetration or attempted perpetration of another felony when there is no break in the chain of events between the felony and the act causing death, so that the felony and homicide are part of the same series of events, forming one continuous transaction." *State v. Wooten*, 295 N.C. 378, 385-86, 245 S.E.2d 699, 704 (1978). "Any person . . . who, having in possession or with the use or threatened use of any . . . dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another" is guilty of robbery with a dangerous weapon. N.C. Gen. Stat. § 14-87(a) (1999).

Furthermore,

[a]n interrelationship between the felony and the homicide is prerequisite to the application of the felony-murder doctrine. 40 C.J.S. *Homicide* § 21(b), at 870; [R.] Perkins, [Criminal Law at 35 (1957)]. A killing is committed in the perpetration or attempted perpetration of a felony within the purview of a felony-murder statute "when there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is linked to or part of the series of incidents, forming one continuous transaction." 40 Am. Jur. 2d *Homicide* § 73, at 367[.]

*State v. Thompson*, 280 N.C. 202, 212, 185 S.E.2d 666, 673 (1972), *superseded by statute on other grounds by State v. Davis*, 305 N.C. 400, 423-24, 290 S.E.2d 574, 588-89 (1982). *See also State v. Fields*, 315 N.C. 191, 337 S.E.2d 518 (1985); and *State v. Murvin*, 304 N.C. 523, 284 S.E.2d 289 (1981).

In this case, the robbery with a dangerous weapon and the murder constituted one continuous transaction. Evidence at trial

STATE v. RAY

[149 N.C. App. 137 (2002)]

revealed that the victim normally carried several hundred dollars with him. Testimony from the tenants of Mr. Harrington's rental homes showed that the tenants paid Mr. Harrington using four one hundred dollar bills. Defendant's employer testified that defendant received a paycheck totaling $135.13 at 10:00 a.m. on the day of the murder. Detective Hendricks testified that, when he processed defendant, he found $446.00 on his person, including four one hundred dollar bills. These facts support a reasonable inference that defendant used a dangerous weapon (the utility knife) to rob Mr. Harrington.

The physical evidence at trial reveals that Mr. Harrington had several defensive wounds on his body, which were not caused by the automobile accident. Dr. Butts testified that the victim was cut with a sharp object, and he further stated that the object could have been a utility knife of some type. The victim's blood was found on both the utility knife and defendant's pants.

While the evidence may permit different inferences regarding the timing of the events, the fact remains that the robbery with a dangerous weapon occurred as part of the same continuous transaction which led to the felony murder of Kyle Harrington. Since there was only one transaction, it does not matter whether Mr. Harrington's money was taken before or after the accident occurred. At some point, Mr. Harrington was threatened and harmed by defendant's brandishment and use of the utility knife.

Defendant argues the evidence supports the lesser offenses of second-degree murder and involuntary manslaughter. We do not agree. Second-degree murder is defined as "the unlawful killing of a human being with malice, but without premeditation and deliberation." *State v. Robbins*, 309 N.C. 771, 775, 309 S.E.2d 188, 190 (1983). In *State v. Snyder*, 311 N.C. 391, 317 S.E.2d 394 (1984), the Supreme Court explained that the type of malice applicable to vehicular homicide cases arises " 'when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.' " *Id.* at 393, 317 S.E.2d at 395 (quoting *State v. Reynolds*, 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982) (citations omitted)).

Involuntary manslaughter is defined as "the unintentional killing of a human being without malice, premeditation or deliberation[.]" *State v. Fox*, 18 N.C. App. 523, 526, 197 S.E.2d 265, 267, *cert. denied,*

283 N.C. 755, 198 S.E.2d 725 (1973). The difference between involuntary manslaughter and second-degree murder is one of the degree of risk and recklessness involved. *See* 2 W. LaFave and A. Scott, *Substantive Criminal Law* § 7.4 (1986). Moreover, both second-degree murder and involuntary manslaughter may involve an act of " 'culpable negligence' that proximately causes death." *State v. Wilkerson*, 295 N.C. 559, 582, 247 S.E.2d 905, 918 (1978). Neither is applicable when the victim is killed during the course of a felony set forth in N.C. Gen. Stat. § 14-17 (1999).

After careful review of the entire record, we conclude that there is no evidence to support jury instructions on either second-degree murder or involuntary manslaughter. Here, defendant wrestled Mr. Harrington for control of the truck, which was traveling nearly seventy miles per hour. The driver's door of the truck was open while the struggle ensued, and the truck was traveling at a high speed going around a noticeable curve in the road. As previously discussed, we also believe the crimes committed by defendant were part of one continuous transaction. Consequently, defendant was not entitled to jury instructions on the lesser offenses of second-degree murder and involuntary manslaughter. Defendant's third assignment of error is hereby overruled.

## IV. Motion to Dismiss

**[5]** By his final assignment of error, defendant argues the trial court committed error in denying his motion to dismiss the kidnapping charge.[3] We agree.

In ruling on a motion to dismiss, the trial court must determine whether there is substantial evidence of each essential element of the charged offense and whether the defendant is the perpetrator of the offense. *State v. Harding*, 110 N.C. App. 155, 162, 429 S.E.2d 416, 421 (1993). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). All evidence is to be considered in the light most favorable to the State. *Harding*, 110 N.C. App. at 162, 429 S.E.2d at 421.

Since kidnapping is a specific intent crime, the State must prove defendant unlawfully confined, restrained, or removed the person for

---

3. Although defendant appealed from the robbery with a dangerous weapon conviction and assigned error to the failure of the trial court to dismiss this charge, the issue is not addressed in defendant's brief and is therefore deemed abandoned. N.C.R. App. P. 28(a) (2000).

one of the purposes set out in N.C. Gen. Stat. § 14-39(a) (1999). *State v. Moore*, 315 N.C. 738, 743, 340 S.E.2d 401, 404 (1986). "The indictment in a kidnapping case must allege the purpose or purposes upon which the State intends to rely, and the State is restricted at trial to proving the purposes alleged in the indictment." *Id.* "[T]he term 'confine' connotes some form of imprisonment within a given area . . . . The term 'restrain,' while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement." *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978).

Here, there is substantial evidence that defendant restrained Harrington's movement; however, there is no evidence which a reasonable juror might accept as adequate to support the conclusion that defendant restrained Harrington for any purpose other than facilitating the armed robbery. Assuming defendant used the utility knife to restrain Harrington for the purpose of kidnapping him, there was no evidence of intent to do bodily harm other than the harm that actually was inflicted when defendant cut Harrington with the utility knife, and that attack was the means rather than the purpose of the restraint. *Moore*, 315 N.C. at 749, 340 S.E.2d at 408 (where assault was the means rather than the purpose of the removal that amounted to kidnapping, it was error for the trial judge to instruct the jury that it could consider the infliction of serious bodily harm as a purpose for the defendant's confinement or removal of the victim). Accordingly, the trial court erred in submitting the kidnapping charge to the jury.

After carefully reviewing the entire record, we conclude that defendant's kidnapping conviction must be reversed. We find no error in defendant's other convictions for first-degree murder and robbery with a dangerous weapon.

Affirmed in part, reversed in part.

Judge CAMPBELL concurs.

Judge GREENE concurs in part and dissents in part with separate opinion.

GREENE, Judge, concurring in part and dissenting in part.

As I believe the trial court erred in denying defendant's motion to instruct the jury on the lesser-included offenses of first-degree murder, I dissent. I fully concur in all other aspects of the majority opinion.

In respect to defendant's request for jury instructions on the lesser-included offenses of first-degree murder, the majority holds that the evidence was sufficient to conclude (1) the robbery with a dangerous weapon occurred and (2) it was part of the same continuous transaction which led to the homicide of Kyle Harrington (Harrington). I disagree.

"A trial court must give instructions on all lesser-included offenses that are supported by the evidence." *State v. Lawrence,* 352 N.C. 1, 19, 530 S.E.2d 807, 819 (2000). Failure to do so amounts to "reversible error that cannot be cured by a verdict finding the defendant guilty of the greater offense." *Id.* The trial court may decline to submit the lesser offense to the jury if "the State's evidence is positive as to each element of the crime charged" and there is no "conflicting evidence relating to any of these elements." *State v. Leroux,* 326 N.C. 368, 378, 390 S.E.2d 314, 322, *cert. denied,* 498 U.S. 871, 112 L. Ed. 2d 155 (1990).

In this case, the jury returned a guilty verdict for first-degree murder after receiving instructions that it could so find if defendant killed Harrington in the perpetration of robbery with a dangerous weapon.[4] "Any person . . . who, having in possession or with the use or threatened use of any . . . dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another" is guilty of robbery with a dangerous weapon. N.C.G.S. § 14-87(a) (1999). "A killing is committed in the perpetration or attempted perpetration of another felony when there is no break in the chain of events between the felony and the act causing death, so that the felony and homicide are part of the same series of events, forming one

---

4. Although the State's use of the short-form murder indictment was sufficient to charge defendant with felony murder on the basis of either kidnapping or robbery with a dangerous weapon, *see State v. Wilson,* 253 N.C. 86, 99, 116 S.E.2d 365, 373 (1960), *cert. denied,* 365 U.S. 855, 5 L. Ed. 2d 819 (1961), the State chose to submit the issue of felony murder to the jury based solely on robbery with a dangerous weapon. As such, the jury was restricted to assessing the first-degree murder charge based on the commission of a robbery with a dangerous weapon.

continuous transaction." *State v. Wooten*, 295 N.C. 378, 385-86, 245 S.E.2d 699, 704 (1978).

1

## Robbery with a dangerous weapon

In this case, there is no positive evidence of robbery with a dangerous weapon. The evidence only establishes that defendant attacked Harrington with a utility knife sometime during the truck ride and the money Harrington was believed to have been carrying in his wallet was later found on defendant. While this evidence permits a reasonable inference defendant attacked Harrington in the truck with a utility knife in an attempt to take Harrington's money and as a consequence of this attack, the truck wrecked causing Harrington's death,[5] the evidence leaves room for another, equally reasonable inference. Harrington's truck could have wrecked as the result of a struggle over control of the truck when defendant attempted to restrain Harrington by use of the utility knife for the purpose of "facilitating the commission" of the robbery, and defendant robbed Harrington after the wreck had killed Harrington.[6] N.C.G.S. § 14-39(a)(2) (1999) (one of the enumerated purposes for kidnapping). Because the evidence is not positive as to the element of *robbery* with a dangerous weapon, the trial court should have submitted instructions on the lesser-included offenses of first-degree murder. *See Leroux*, 326 N.C. at 378, 390 S.E.2d at 322.

2

## Continuous transaction

Even assuming positive evidence of robbery with a dangerous weapon exists, there is no positive evidence based on the record that defendant killed Harrington in the perpetration or attempted perpetration of the robbery. I agree with the majority that the evidence permits a reasonable inference that defendant attacked Harrington in the truck for the sole purpose of robbing him and that the struggle, which led to the wreck causing Harrington's death, was part of one continu-

---

5. Under this theory, it is immaterial whether Harrington's money and personal papers were taken from him by defendant before or after Harrington's death.

6. If defendant did in fact rob Harrington after Harrington had been thrown from the truck, there would be no basis for robbery with a dangerous weapon as the evidence establishes the utility knife was used at a time Harrington was still able to defend himself. To cover this instance, the State should have also proceeded with felony murder based on *kidnapping*. *See* N.C.G.S. § 14-39(a)(2) (1999).

ous transaction. Another reasonable inference, however, is that the robbery was completed sometime before the wreck occurred; after the robbery, but still prior to the wreck and Harrington's death, Harrington was restrained by defendant for the purpose of "facilitating [defendant's] flight." N.C.G.S. § 14-39(a)(2) (another enumerated purpose of kidnapping). As the eyewitness accounts cannot resolve this ambiguity, the evidence in this case is not positive to establish that there was "no break in the chain of events between the felony" of robbery with a dangerous weapon "and the act causing [Harrington's] death," making the felony and homicide "part of the same series of events, forming one continuous transaction." *Wooten*, 295 N.C. at 385-86, 245 S.E.2d at 704. Consequently, I believe defendant was entitled to have the jury instructed on the lesser-included offenses of first-degree murder and the trial court erred in not doing so. I would therefore reverse the first-degree murder conviction and remand this case for a new trial.