STROUD, Judge.
 

 *633
 
 Defendant appeals his conviction for felony death by vehicle. The trial court erred by admitting lay opinion testimony identifying defendant as the driver of the vehicle at the time of an accident in which an occupant of the car was killed where the expert accident reconstruction analyst was unable to form an expert opinion based upon the same information available to the lay witness. We therefore reverse defendant's conviction and grant defendant a new trial.
 

 I. Background
 

 On 1 August 2014, defendant and Danielle Mitchell were both in a car when it ran off the road and wrecked; both were ejected from the car and Ms. Mitchell died at the scene from her injuries. Defendant was indicted for felony death by vehicle. The primary factual issue at trial was whether defendant was driving at the time of the accident.
 

 The State's evidence showed that on the morning of 1 August 2014, defendant and Ms. Mitchell decided to go to Asheville to find some "[w]hite lightning" liquor in a "[k]ind of an old and red, burgundy looking" car that "might've been a Dodge" that defendant drove. Defendant and Ms. Mitchell spent time together often during the year preceding the wreck, either at her home or the home of Ms. Mitchell's father, Mr. Daniel Seay, where they would "hang out, talk ... drink, smoke, watch football games, baseball games." Ms. Mitchell and her father lived about a quarter of a mile from each other, and defendant's understanding was that Ms. Mitchell did not have her own car.
 

 On 1 August 2014, defendant and Ms. Mitchell left before lunch and defendant was driving as they left Mr. Seay's house, and Mr. Seay testified that he had "never seen nobody else ever drive [defendant's] car." Mr. Seay recalled that "[defendant] wouldn't let nobody behind the wheel of that car[,]" and "[t]here was a few times that he, he had to move to let somebody out, and he would always move the car. Nobody touched his car." Mr. Seay testified that his daughter, Ms. Mitchell, had ridden in the car before but she always sat in the front passenger seat.
 

 Shortly before 10:00 p.m. that evening, defendant and Ms. Mitchell called Mr. Seay from a gas station and told him that the car was overheating. Defendant told Mr. Seay, "She's flipping out," and reassured Mr. Seay they were all right and would "be there in a few minutes." Shortly thereafter, Mr. Seay heard sirens close to the house. Around 10:10 p.m., Trooper Jason Fox of the North Carolina State Highway Patrol received a dispatch call regarding a vehicle crash at US 25-70 near the Brush Creek area. After arriving at 10:22 p.m., Trooper Fox spoke with EMS
 

 *634
 
 who advised that two occupants had been ejected from the vehicle. One of the occupants, later identified as Ms. Mitchell, was already deceased. Defendant suffered from a severe head injury in the accident and had no memory of what happened on the day of the accident.
 

 *677
 
 Defendant was also seriously injured, and EMS called for a helicopter to transport him to the hospital. EMS stabilized defendant's neck in a "C" collar and placed him on a backboard. While EMS was working with defendant, he was screaming, hyperventilating, and combative; he was ultimately sedated for flight.
 

 Since the crash resulted in a fatality, Trooper Fox notified his supervisor. Trooper Fox also found a witness to the wreck, Mr. David Martin. Mr. Martin reported that he was traveling on the highway toward Hot Springs when an "orange-ish, reddish" car came up behind him "extremely fast" such that Mr. Martin "did not see it coming before it was basically on top of [him]." Mr. Martin estimated that the car was traveling twice as fast as he was. The car passed Mr. Martin on the left side in a no-passing zone, "started ... a left turn and ... ran off the right side of the road, and when it did, dust and rocks and stuff started flying." At that point, Mr. Martin saw "just headlights and taillights. Looked like [the car] was rolling, flipping." Mr. Martin stopped immediately to help and call 911. Mr. Martin saw a woman, apparently deceased, and a man further up the road, moving a little but incoherent.
 

 Troopers Sorrells and Carver, along with First Sergeant Bray, went to the scene to assist Trooper Fox with his investigation and completion of the field sketch. Trooper Fox took photographs of the scene. The vehicle involved in the crash, a red or burgundy 2001 Dodge Neon registered to defendant's mother, was off the left shoulder of the roadway facing towards Hot Springs. Trooper Fox found a sealed beer bottle by Ms. Mitchell's body, a Miller Highlife can and an empty Corona box in the debris path, and Corona beer bottle caps inside the vehicle and near Ms. Mitchell's body. Trooper Fox believed the crash involved alcohol use because of "the bottle caps located in the vehicle, the still-closed beer bottle that was located in the debris path ... there was a strong odor of alcohol coming from the vehicle itself." Based upon a blood test from the hospital, Defendant's blood alcohol level was .182, and benzodiazepine and cannabinoid were present in his urine.
 

 Trooper Fox determined that the Neon had been traveling north at a high rate of speed in a forty-five mile per hour zone, lost control and ran off the right shoulder of the roadway, struck a road sign, proceeded into a ditch and struck a rock which caused it to overturn and roll four
 
 *635
 
 or five times, traveled across the highway and back off the other side, and came to rest on all four wheels after striking a small block building. Neither defendant nor Ms. Mitchell had been wearing a seatbelt prior to being ejected, as each seatbelt was in a locked position near the respective door frames. The airbags did not deploy. Long strands of "brown[ ] or dark colored" hair were trapped in the passenger side of the vehicle and in windshield glass. Ms. Mitchell's hair was dark brown.
 

 Trooper Fox measured the distance from the front edge of the driver's seat to the accelerator pedal as 1 foot 9 inches; from the back of the driver's seat to the pedal as 3 feet 6 inches; and from the top edge of the driver's seat to the center of the steering wheel as 2 feet 8 inches. Defendant is 5'11" tall according to the DMV database, and Ms. Mitchell was measured at approximately 5'2" by the medical examiner. Over defendant's objection, Trooper Fox testified he believed defendant was driving at the time of the crash because "the seating position was pushed back to a position where I did not feel that Ms. Mitchell would be able to operate that vehicle or reach the pedals."
 

 But Trooper Fox acknowledged that he was not an expert in accident reconstruction, although one was called to the investigation. Trooper Daniel Souther of the North Carolina Highway Patrol was the accident reconstruction expert who analyzed the accident. He could not reach a conclusive expert opinion about who was driving at the time of the accident, although he had three different theories of how the accident happened, one of which he deemed the most plausible in which defendant was the driver.
 

 Trooper Souther testified "the only way it makes sense to me is that Theory 1" in which defendant was the driver of the vehicle, but Trooper Souther clarified "I'm not saying 100 percent this is right, but this makes the most sense to me[,]" and ultimately he testified
 
 *678
 
 that he could not "conclusively state [defendant] was operating th[e] vehicle." Later Trooper Souther was asked, "And so you are telling us that as an expert in the field of accident reconstruction you do not have an opinion satisfactory to yourself within any reasonable degree of certainty as to who was driving this car on August 1st, 2014?" to which he responded, "Not [that] I can prove." Ultimately, defendant was found guilty by a jury, sentenced accordingly, and now appeals.
 

 II. Opinion Testimony
 

 Defendant's only argument on appeal is that "the trial court erred by overruling defendant's objections to testimony from State Trooper Jason Fox, who admittedly was not an expert, that it was his opinion that
 
 *636
 
 defendant ... was driving the car at the time of the collision." (Original in all caps.) "[W]hether a lay witness may testify as to an opinion is reviewed for abuse of discretion."
 
 State v. Washington
 
 ,
 
 141 N.C.App. 354
 
 , 362,
 
 540 S.E.2d 388
 
 , 395 (2000). The trial court abused its discretion in allowing Trooper Fox to testify, over defendant's objections, to his opinion as to who was driving the vehicle.
 
 See, e.g.,
 

 Shaw v. Sylvester
 
 ,
 
 253 N.C. 176
 
 , 179-80,
 
 116 S.E.2d 351
 
 , 354-55 (1960).
 

 North Carolina Rule of Evidence 701 provides that
 

 [i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.
 

 N.C. Gen. Stat. § 8C-1, Rule 701 (2017).
 

 Opinion evidence is generally inadmissible whenever the witness can relate the facts so that the jury will have an adequate understanding of them and the jury is as well qualified as the witness to draw inferences and conclusions from the facts. If either of these conditions is absent, the evidence is admissible.
 

 Although a lay witness is usually restricted to facts within his knowledge, if by reason of opportunities for observation he is in a position to judge of the facts more accurately than those who have not had such opportunities, his testimony will not be excluded on the ground that it is a mere expression of opinion.
 

 State v. Lindley
 
 ,
 
 286 N.C. 255
 
 , 257-58,
 
 210 S.E.2d 207
 
 , 209 (1974) (citations and quotation marks omitted).
 

 Accident reconstruction analysis requires expert opinion testimony; we can find no instance of
 
 lay
 
 accident reconstruction analysis testimony in North Carolina.
 
 See
 

 State v. Maready
 
 ,
 
 205 N.C.App. 1
 
 , 17,
 
 695 S.E.2d 771
 
 , 782 (2010) ("Accident reconstruction opinion testimony may only be admitted by experts, who have proven to the trial court's satisfaction that they have a superior ability to form conclusions based upon the evidence gathered from the scene of the accident than does the jury."). Accident reconstruction by its very nature requires expert analysis of the information collected from the scene of the accident and falls under Rule of Evidence 702,
 

 *637
 
 Subsection (a)(1) of Rule 702 calls for a quantitative rather than qualitative analysis. That is, the requirement that expert opinions be supported by sufficient facts or data means that the expert considered sufficient data to employ the methodology.
 

 Consequently, as a general rule, questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility. In other words, this Court does not examine whether the facts obtained by the witness are themselves reliable-whether the facts used are qualitatively reliable is a question of the weight to be given the opinion by the factfinder, not the admissibility of the opinion.
 

 Additionally, experts may rely on data and other information supplied by third parties even if the data were prepared for litigation by an interested party. Unless the expert's opinion is too speculative, it should not be rejected as unreliable merely because the expert relied on the reports of others. An expert may rely on deposition statements made by other witnesses in developing the factual basis of his opinion.
 

 *679
 

 Pope v. Bridge Broom, Inc.
 
 ,
 
 240 N.C.App. 365
 
 , 374,
 
 770 S.E.2d 702
 
 , 710 (2015) (citations, quotation marks, ellipses, and brackets omitted).
 

 Trooper Fox was not a witness to the accident; he assisted in collecting the measurements and information regarding the scene used by the accident reconstruction expert, Trooper Souther, to try to determine who was driving the car. Although he had three theories of who was driving the vehicle, Trooper Souther admitted he did not have the necessary information to come to an expert opinion to a sufficient degree of certainty and he could not identify the driver of the car. Trooper Fox was basing his lay opinion upon the very same information used by Trooper Souther, but without the benefit of expert analysis.
 

 This case is similar to
 
 Shaw
 
 in that the facts about the accident and measurements available were simply not sufficient to support an expert opinion - as Trooper Souther testified - and lay opinion testimony on this issue is not admissible under Rule 701.
 
 See
 

 Shaw v. Sylvester
 
 ,
 
 253 N.C. 176
 
 , 179-80,
 
 116 S.E.2d 351
 
 , 354-55 (1960). As explained in
 
 Shaw
 
 ,
 

 The known facts in this case leave too many unknowns and imponderables to permit anyone to say with any degree of certainty who was the driver. This
 
 *638
 
 case furnishes a good illustration why courts look with disfavor upon attempts to reconstruct traffic accidents by means of expert testimony, owing to the impossibility of establishing with certainty the many factors that must be taken into consideration.
 

 As a general rule, a witness must confine his evidence to the facts. ... The jury is just as well qualified as the witnesses to determine what inferences the facts will permit or require.
 

 The qualified expert, the nonobserver, may give an opinion in answer to a proper hypothetical question in matters involving science, art, skill and the like. The plaintiff contends Sgt. Etherage placed himself in this expert category by having investigated more than 400 wrecks. There is no evidence that wrecks follow any set or fixed pattern. An automobile, like any other moving object, follows the laws of physics; but which door came open first during the movement would depend upon the amount and direction of the physical forces applied, and the place of their application. There was no evidence the witness ever investigated an accident when both doors were open and both occupants thrown out. In this case neither the nonobserver nor the jury could tell who was the driver.
 

 The ruling of the trial court that Sgt. Etherage was not qualified to testify that Becker was thrown through the left door and, therefore, was the driver is in accordance with our decisions. The evidence at the trial was insufficient to raise a jury question.
 

 Id
 
 . at 179-80,
 
 116 S.E.2d at 354-55
 
 (citations and quotation marks omitted);
 
 see also
 

 Maready
 
 ,
 
 205 N.C.App. at 17
 
 ,
 
 695 S.E.2d at 782
 
 ("We hold that the admission of the officers' opinion testimony concerning their purported accident reconstruction conclusions was error. Accident reconstruction opinion testimony may only be admitted by experts, who have proven to the trial court's satisfaction that they have a superior ability to form conclusions based upon the evidence gathered from the scene of the accident than does the jury.");
 
 State v. Wells
 
 ,
 
 52 N.C.App. 311
 
 , 314,
 
 278 S.E.2d 527
 
 , 529 (1981) ("Our State Supreme Court has held in several cases that while it is competent for an investigating officer to testify as to the condition and position of the vehicles and other physical facts observed by him at the scene of an accident, his testimony as to his conclusions from those facts is incompetent. A case
 
 *639
 
 almost directly on point is
 
 Cheek v. Barnwell Warehouse and Brokerage Co.
 
 ,
 
 209 N.C. 569
 
 ,
 
 183 S.E. 729
 
 (1936). In that case the Supreme Court upheld the trial court's exclusion of opinion testimony by a nonexpert witness as to where a collision occurred based upon his examination of the scene sometime after the accident on the ground that its admission would invade the province of the jury. In the present case, the most crucial question for the jury on the manslaughter charge was whether defendant caused the collision which resulted in decedent's death by crossing the center line into
 
 *680
 
 decedent's lane of travel. By testifying that his investigation revealed the point of impact between the two cars to be in decedent's lane of travel, Trooper Parks stated an opinion or conclusion which invaded the province of the jury." (citations omitted)).
 

 The State's brief addresses the general law on opinion testimony and cites to only
 
 State v. Ray
 
 ,
 
 149 N.C.App. 137
 
 ,
 
 560 S.E.2d 211
 
 (2002),
 
 aff'd per curiam
 
 ,
 
 356 N.C. 665
 
 ,
 
 576 S.E.2d 327
 
 (2003), and an unpublished case to support its argument on appeal. An unpublished opinion "does not constitute controlling legal authority[,]" and we need not address it because other cases do address the issues presented here. N.C.R. App. P. 30(e)(3).
 
 Ray
 
 does not support the State's argument, since there was expert testimony to the same opinion as presented by the lay witness, and the court assumed that "[e]ven if inclusion of [the lay opinion testimony] was erroneous" it was harmless based upon the expert testimony.
 
 149 N.C.App. at 145
 
 ,
 
 560 S.E.2d at 217
 
 . In
 
 Ray
 
 , defendant argued
 

 the trial court erred in overruling his objection to Detective Hendricks' opinion testimony that the lacerations on Harrington's hand were not consistent with a traffic accident, because Detective Hendricks was not qualified as a medical expert under Rule 702 of the North Carolina Rules of Evidence. The State, however, did not tender Detective Hendricks as an expert witness. Detective Hendricks offered a lay witness opinion based on his personal observations at the scene and his investigative training background as a police officer.
 
 See
 
 N.C. Gen. Stat. § 8C-1, Rule 701 (1999) (lay witness may testify as to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue). Even if inclusion of Detective Hendricks' opinion testimony was erroneous, it would be harmless error in light of Dr. Butts' expert testimony that the lacerations on Harrington's hand were consistent with defensive wounds
 
 *640
 
 and could have been caused by the utility knife. Thus, the trial court properly overruled defendant's objection to Detective Hendricks' testimony.
 

 Id.
 

 The circumstances of this case are basically the opposite of
 
 Ray
 
 because in
 
 Ray
 
 the expert opinion confirmed the testimony of the lay witness, rendering any potential error harmless; here, the expert was unable to form an opinion.
 
 See
 
 id.
 

 For the same reason, we cannot agree with the State's contention that Trooper Fox's testimony was harmless. Trooper Souther was the expert in accident reconstruction and while he believed that his theory which placed defendant as the driver made the "most sense[,]" he admitted this case was very challenging and he simply did not have sufficient information regarding the many variables involved to come to a conclusive determination.
 

 Trooper Fox was in no better position than the jury to consider the evidence the State directs us to indicating defendant was the driver, including witness testimony that the car was owned by defendant's mother and only defendant drove that vehicle, the location of Ms. Mitchell's hair in the glass, and the position of the driver's seat.
 
 See
 

 Wells
 
 ,
 
 52 N.C.App. at 314
 
 ,
 
 278 S.E.2d at 529
 
 . The State's expert accident reconstruction analyst could not testify to a reasonable degree of certainty as to an opinion of who was driving. The only issue in serious contention at trial was who was driving the car; if Ms. Mitchell was driving, defendant could not be guilty. If defendant was driving, the evidence regarding speeding, reckless driving, alcohol consumption, defendant's high blood alcohol level, and evidence of other impairing substances in his blood at the time of the accident would essentially guarantee a guilty verdict. In this context, Trooper Fox's opinion testimony was not harmless. Therefore, defendant must receive a new trial. We also note that the State filed a motion for appropriate relief or alternatively a petition for a writ of certiorari asking us to review defendant's sentence, but because we are granting defendant a new trial, we need not address this issue.
 

 *681
 
 III. Conclusion
 

 We conclude defendant must receive a new trial.
 

 NEW TRIAL.
 

 Judges INMAN and ZACHARY concur.