STATE OF NORTH CAROLINA v. LANCE ALBERT SNYDER

No. 76PA84

(Filed 6 July 1984)

**Homicide § 21.7— second-degree murder—malice—recklessness of consequences—disregard for human life**

The State's evidence was sufficient to support a finding that defendant's acts evidenced recklessness of consequences and a total disregard for human life so as to establish the malice necessary to support conviction of defendant of three counts of second-degree murder where it tended to show that defendant was drunk and engaged in a fight with a tavern owner; defendant staggered to his car in the tavern parking lot and drove off; defendant passed a car in a "no passing zone," struck a motorcycle from behind and forced it from the road, and continued toward an intersection; as defendant approached the intersection, the traffic light facing him was red, as it had been for some time, and defendant entered the intersection at a speed of 60 to 70 miles per hour; as defendant entered the intersection, he crashed into another car occupied by three persons who were killed by the impact; and after the accident defendant had a blood alcohol level of .24 percent and perhaps as high as .32 percent.

ON discretionary review of a decision by the Court of Appeals, 66 N.C. App. 358, 311 S.E. 2d 379 (1984), reversing three convictions of the defendant for second-degree murder entered by *Judge Julius Rousseau, Jr.*, presiding at the November 29, 1982 session of Superior Court, FORSYTH County. Heard in the Supreme Court May 11, 1984.

*Rufus L. Edmisten, Attorney General, by David E. Broome, Jr., Assistant Attorney General, for the State.*

*James J. Booker and W. Eugene Metcalf, for the defendant appellee.*

MITCHELL, Justice.

The State seeks review of a Court of Appeals decision which reversed three convictions for murder in the second degree upon a finding that there was no evidence of malice on the part of the defendant. We reverse the decision of the Court of Appeals and remand the case to that court for further consideration.

The evidence at trial tended to show that on September 4, 1982 the defendant spent the afternoon with his brother in Winston-Salem. The two drank until about 4:00 p.m. when they went to a local tavern called Smokey's Lounge. The defendant was described as being loud, vulgar, rowdy and drunk. Worth Shelton, the proprietor of the bar, refused to serve the two men drinks and ordered them to leave. A fight ensued in which Shelton struck the defendant twice. The defendant fell and hit his head on the base of a door. Rising, the defendant staggered to his car in the parking lot and struck it with his fist. He got inside the car and drove off onto Highway 311.

Walden Ball was traveling on Highway 311 at that time. He testified that he heard squealing tires behind his car. In his rearview mirror, Ball saw the defendant approaching from behind in a beige Cutlass. The defendant passed Ball's car in a "no passing" zone. Ball further testified that after passing him, the defendant struck a motorcycle from behind forcing it from the road. The defendant continued driving toward the intersection of Highway 311 and Highway 66. As he approached the intersection, the traffic light facing him was red, as it had been for some time. The defendant entered the intersection at a speed of 60 to 70 miles per hour.

As the defendant entered the intersection, he swerved to avoid one car in his lane and crashed into another car occupied by three persons who were killed by the impact. After the accident, the defendant was taken to Forsyth Memorial Hospital. Records

at the hospital indicated that the defendant had a blood alcohol level of .24 percent and perhaps as high as .32 percent.

The defendant's evidence at trial tended to show that he could not remember anything that occurred after being struck by the tavern owner. He attempted to offer testimony showing that he may have been unconscious at the time of the accident, but the trial court refused to permit him to produce evidence along those lines and refused to instruct the jury on a defense of unconsciousness. The jury found the defendant guilty of three counts of second-degree murder. In sentencing the defendant, the trial court found as an aggravating factor that the defendant was engaged in a pattern of violent conduct. The trial court found no mitigating factors and sentenced the defendant to twenty years imprisonment for each conviction to be served concurrently.

The defendant appealed to the Court of Appeals. The Court of Appeals reversed the convictions. Although the issue was not raised by the parties, the Court of Appeals held that the convictions constituted "plain error" as there was no evidence at trial of malice on the part of the defendant. We disagree.

Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Robbins*, 309 N.C. 771, 309 S.E. 2d 188 (1983); *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). While an intent to kill is not a necessary element of murder in the second degree, that crime does not exist in the absence of some intentional act sufficient to show malice and which proximately causes death. *State v. Lang*, 309 N.C. 512, 308 S.E. 2d 317 (1983). *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905.

In *State v. Reynolds*, 307 N.C. 184, 297 S.E. 2d 532 (1982) this Court stated that there are three kinds of malice in our law of homicide.

> One connotes a possible concept of express hatred, ill-will or spite, sometimes called actual, express or particular malice. . . . Another kind of malice arises when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief. . . . Both these kinds of malice would support a conviction of

murder in the second degree. There is, however, a third kind of malice which is defined as nothing more than "that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification."

307 N.C. at 191, 297 S.E. 2d at 536 (citations omitted). It is the second kind of malice which is applicable to the case at bar. As we stated in *State v. Wilkerson*, 295 N.C. 559, 581, 247 S.E. 2d 905, 917,

any act evidencing "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty and deliberately bent on mischief, though there may be no intention to injure a particular person" is sufficient to supply the malice necessary for second degree murder. Such an act will always be accompanied by a general intent to do the act itself but it need not be accompanied by a specific intent to accomplish any particular purpose or do any particular thing.

The evidence presented at trial and previously reviewed herein was sufficient to support a finding that the defendant's acts evidenced recklessness of consequences and "total disregard for human life." *State v. Lang*, 309 N.C. at 528, 308 S.E. 2d at 325. Such a finding supplies the malice necessary to support a conviction for second degree murder. *Id.; State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905. Therefore, the trial court correctly submitted and instructed the jury on a possible verdict of second-degree murder. For the foregoing reasons, the decision of the Court of Appeals is reversed and the case is remanded to that court with instructions that it reinstate the defendant's appeal and proceed to a determination on the merits of the issues raised there by the defendant. *See e.g. State v. Nickerson*, 308 N.C. 376, 302 S.E. 2d 221 (1983).

Reversed and remanded.