STATE OF NORTH CAROLINA v. WILLIAM JAMES YOUNG

No. 153A88

(Filed 8 June 1989)

1. **Homicide § 32.1— first degree murder verdict — premeditation and deliberation — failure to instruct on involuntary manslaughter as harmless error**

    Assuming arguendo that the trial court in a first degree murder case erred in failing to instruct the jury to consider a possible verdict of the lesser included offense of involuntary manslaughter, the error was harmless where the trial court gave correct instructions as to possible verdicts on murder in the first and second degrees and the jury found defendant guilty of the greater crime of murder in the first degree upon a theory of premeditation and deliberation. Prior decisions are disavowed to the extent that they state or imply that a verdict of first degree murder in such situations does not render harmless the failure to give instructions on involuntary manslaughter or errors made in giving such instructions.

2. **Criminal Law § 165— expressions of opinion by trial court — failure to object — right of appeal**

    The statutory prohibitions against expressions of opinion by the trial court contained in N.C.G.S. §§ 15A-1222 and 15A-1232 are mandatory, and a defendant's failure to object to alleged expressions of opinion in violation of those statutes does not preclude his raising the issue on appeal.

3. **Criminal Law § 114.2— instructions — evidence tending to show defendant confessed to crime charged — no expression of opinion**

    The trial court in a first degree murder case did not express an opinion on the evidence by instructing the jury that there was evidence in the case which "tends to show" that defendant "confessed that he committed the crime charged" where evidence had been introduced that defendant made a statement to officers which, if believed by the jury, was sufficient to support a verdict finding that defendant intentionally shot his wife after premeditation and deliberation and was thus guilty of first degree murder.

**4. Criminal Law § 114.2— instructions—evidence tending to show defendant confessed to crime charged—no expression of opinion that defendant confessed**

The trial court's instruction in a first degree murder case that there was evidence tending to show that defendant confessed to the crime charged did not amount to an expression of opinion that defendant had in fact confessed where further instructions made it clear that the court left it entirely for the jury to determine whether the evidence showed that defendant in fact had confessed.

Justice WEBB concurring.

APPEAL of right pursuant to N.C.G.S. § 7A-27 from judgment entered by *Davis, J.*, in the Superior Court, WILKES County, on 12 November 1987, sentencing the defendant to life imprisonment for murder in the first degree. Heard in the Supreme Court on 13 February 1989.

*Lacy H. Thornburg, Attorney General, by John H. Watters, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for the defendant appellant.*

MITCHELL, Justice.

The defendant was tried in a noncapital trial upon a proper indictment charging him with the murder of his wife. The jury was instructed on possible verdicts of first degree murder, second degree murder, or not guilty. The jury found the defendant guilty of first degree murder on the theory that the killing was premeditated and deliberate, the only theory upon which first degree murder was submitted.

On appeal, the defendant contends that the trial court committed prejudicial error when it refused to instruct on involuntary manslaughter and that this error was not cured by the jury's verdict finding him guilty of first degree murder. Further, the defendant contends that the trial court's instruction which referred to evidence tending to show that the defendant had "confessed" to the crime charged was error requiring a new trial, notwithstanding his failure to object. We conclude, however, that the defendant's trial was free of prejudicial error.

The evidence presented at trial tended to show that the defendant began drinking liquor early in the afternoon of 25 July 1987 and drank liquor heavily throughout that afternoon and early evening. After a cookout at his relatives' house, during which the defendant became sick, the defendant and his wife and baby daughter returned to their residence, where the defendant took a brief nap. Upon awakening, the defendant went to his car and finished a fifth of liquor, then re-entered the residence.

The defendant decided that he needed to drive to the store to buy beer. A heated argument ensued with his wife, who refused to give him his car keys because she said he was too drunk to drive. During the argument, the defendant selected a loaded .30-.30 rifle from his gun rack, cocked it and pointed it at his wife's face, demanding his keys. The gun went off, and the defendant's wife was killed instantly as a .30-.30 bullet fired at close range entered her right eye, traveled straight through her brain and exited the back of her skull.

The defendant left the residence with his daughter and went to a neighbor's house. The neighbor gave them a ride to the defendant's father's house, where the defendant left his daughter with his sister and drove away on a moped. Soon thereafter, the defendant turned himself in to authorities.

The defendant contended at trial that the shooting was an accident. He requested jury instructions on the lesser included offenses of voluntary and involuntary manslaughter, which the trial court refused to give. However, the trial court did give an instruction on the defense of accident.

On appeal, the defendant concedes that the evidence would not support a verdict convicting him of voluntary manslaughter. He maintains, however, that the evidence would support a finding that the rifle went off accidentally during the commission of an assault by pointing a gun, which he argues would in turn support a verdict finding him guilty of involuntary manslaughter. He assigns as error the trial court's failure to give an involuntary manslaughter instruction and argues that the error was not cured by the jury's verdict convicting him of first degree murder.

Involuntary manslaughter is a lesser included offense of second degree murder. *State v. Greene*, 314 N.C. 649, 336 S.E. 2d 87

(1985). However, the defendant's assertion that the evidence justified instructing the jury to consider a possible verdict convicting him of the lesser included offense of involuntary manslaughter in the present case is problematic. *See, e.g., State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978) (specific intent to kill not a necessary element of second degree murder, and an intentional act is sufficient to supply the required malice if it reveals recklessness of consequences and a mind devoid of social duty, even though there may be no intent to injure). *See, also, State v. Snyder*, 311 N.C. 391, 317 S.E. 2d 394 (1984) (malice for conviction of second degree murder where deaths resulted from automobile wreck caused by reckless driving of a drunken driver).

[1]  We find it unnecessary to decide in the present case whether the trial court's failure to instruct the jury to consider a possible verdict for the lesser included offense of involuntary manslaughter was error. Assuming *arguendo* that the trial court erred in this regard, the error was harmless because the trial court gave correct instructions as to possible verdicts on murder in the first and second degrees and the jury found the defendant guilty of the greater crime of murder in the first degree upon a theory of premeditation and deliberation. *State v. Whitley*, 311 N.C. 656, 667, 319 S.E. 2d 584, 591 (1984). *Cf. State v. Freeman*, 275 N.C. 662, 170 S.E. 2d 461 (1969) (reviewing authorities from other states to the same effect). In so holding, we expressly disavow prior decisions of this Court to the extent that they state or imply that a verdict of first degree murder in such situations does not render the failure to give instructions on involuntary manslaughter, or errors made in giving such instructions, harmless. *E.g., State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969); *State v. McNeill*, 229 N.C. 377, 49 S.E. 2d 733 (1948); *State v. Childress*, 228 N.C. 208, 45 S.E. 2d 42 (1947); *State v. Burnette*, 213 N.C. 153, 195 S.E. 356 (1938); *State v. Lee*, 206 N.C. 472, 174 S.E. 288 (1934); *State v. Robinson*, 188 N.C. 784, 125 S.E. 617 (1924); *State v. Williams*, 185 N.C. 685, 116 S.E. 736 (1923); *State v. Thomas*, 184 N.C. 757, 114 S.E. 834 (1922); *State v. Merrick*, 171 N.C. 788, 88 S.E. 501 (1916).

The defendant recognizes that this Court has previously held that errors in voluntary manslaughter instructions are deemed harmless when the jury has chosen to convict for first degree murder rather than second degree murder. *E.g., State v. Freeman*, 275 N.C. 662, 667, 170 S.E. 2d 461, 464 (1969). The defendant

argues, however, that the evidence in this case would support a finding that he did not intentionally kill his wife and that the lack of an involuntary manslaughter instruction, therefore, deprived the jury of any opportunity to accept his evidence that the killing was unintentional. We do not agree.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Johnson*, 317 N.C. 193, 344 S.E. 2d 775 (1986); *State v. Judge*, 308 N.C. 658, 303 S.E. 2d 817 (1983); *State v. Bush*, 307 N.C. 152, 297 S.E. 2d 563 (1982). "Premeditation" is defined as thought beforehand, for some length of time, however short. *Id.* "Deliberation" means an intent to kill carried out by the defendant in a cool state of blood. *Id.* A *specific intent to kill* is a necessary constituent of the elements of premeditation and deliberation. *State v. Propst*, 274 N.C. 62, 161 S.E. 2d 560 (1968). Proof of premeditation and deliberation is proof of that intent. *State v. Quesinberry*, 319 N.C. 228, 354 S.E. 2d 446 (1987).

Second degree murder is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Snyder*, 311 N.C. 391, 317 S.E. 2d 394 (1984); *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). Although second degree murder does not exist absent some intentional *act* sufficient to show malice and which proximately causes death, an intent *to kill* is not a necessary element of that crime. *Id.*

The jury in the present case was instructed that it could not return a verdict finding the defendant guilty of first degree murder unless it found beyond a reasonable doubt that he specifically intended to kill the victim, that he formed the intent for some amount of time beforehand and that he carried out that intent in a cool state of mind. Further, the trial court instructed the jury that it could return a verdict convicting the defendant of second degree murder if it found that the defendant acted without a specific intent to kill, premeditation or deliberation. In reaching its verdict convicting the defendant of first rather than second degree murder, the jury found beyond a reasonable doubt that he had the specific intent to kill his wife and, necessarily, rejected the possibility that the killing was unintentional. *See State v. Bush*, 307 N.C. at 164, 297 S.E. 2d at 571 ("In finding the defendant guilty beyond a reasonable doubt of the willful, deliberate and

premeditated killing of the victim, the jury . . . necessarily rejected *beyond a reasonable doubt* the possibility that the defendant acted in the heat of passion."). Therefore, the jury verdict finding the defendant guilty of first degree murder precludes the possibility that the same jury might have found him guilty of involuntary manslaughter on the ground that the killing was unintentional, even if it had been given an instruction on that lesser included crime. *Cf. State v. Freeman*, 275 N.C. at 668, 170 S.E. 2d at 465 (reviewing authorities from other jurisdictions to the same effect). This assignment of error is without merit and is rejected.

By his other assignment of error, the defendant contends that the trial court committed reversible error by expressing an opinion on the evidence during its instructions to the jury. The defendant argues that this error requires a new trial, notwithstanding his failure to object. The State argues, on the other hand, that due to the failure of the defendant to object, appellate review of this assignment is limited under *State v. Loftin*, 322 N.C. 375, 368 S.E. 2d 613 (1988) and *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983) to the issue of whether the trial court committed "plain error."

[2] The statutory prohibitions against expressions of opinion by the trial court contained in N.C.G.S. § 15A-1222 and N.C.G.S. § 15A-1232 are mandatory. A defendant's failure to object to alleged expressions of opinion by the trial court in violation of those statutes does not preclude his raising the issue on appeal. *See State v. Ashe*, 314 N.C. 28, 331 S.E. 2d 652 (1985); *State v. Bryant*, 189 N.C. 112, 126 S.E. 107 (1925) (decided under former N.C.G.S. § 1-180). As a result, we turn to a consideration of the issue presented by this assignment of error.

During its charge to the jury, the trial court gave the following instructions, taken from the North Carolina Pattern Jury Instructions.

There is evidence in this case which tends to show that the defendant confessed that he committed the crime charged in this case. Now, if you find that the defendant made that confession, then you should consider all the circumstances under which it was made in determining whether it was a truthful confession and the weight which you will give to it.

*See* N.C.P.I.—Crim. 104.70 (1970). Thereafter, the trial court gave instructions concerning the credibility of witnesses, the possible effect of intoxication on intent, and the defense of accident. The trial court next stated, "Now, the defendant in this case, members of the jury, has been accused of first degree murder." The trial court then instructed on the elements of first and second degree murder.

[3] The defendant, relying upon *State v. Bray*, 37 N.C. App. 43, 245 S.E. 2d 190, *disc. rev. denied*, 295 N.C. 553, 248 S.E. 2d 730 (1978), contends that the trial court's instructions concerning evidence "tending to show" that he had "confessed" to the crime charged, together with its subsequent statement that he was accused of first degree murder, amounted to an expression of opinion on the evidence in violation of the statutes. We disagree.

The use of the words "tending to show" or "tends to show" in reviewing the evidence does not constitute an expression of the trial court's opinion on the evidence. *State v. Allen*, 301 N.C. 489, 272 S.E. 2d 116 (1980); *State v. Huggins*, 269 N.C. 752, 153 S.E. 2d 475 (1967). Nor did the trial court's statement that the evidence tended to show that the defendant had "confessed" that he "committed the crime charged" amount to an expression of opinion by the trial court, *because* evidence had been introduced which in fact tended to show that the defendant had confessed and to the *crime charged*, first degree murder.

In the present case, evidence was introduced tending to show that the defendant was interviewed for two and one-half hours by officers of the Wilkes County Sheriff's Department, during which time he made a statement to the effect that he had been drinking heavily since about 1:00 p.m. on the date of the killing. The defendant had finished a fifth of liquor at approximately 3:00 p.m. when Barry Blankenship and his wife, Linda, came to the defendant's home. The defendant and Blankenship left at about 4:00 p.m. and got another fifth of liquor. They picked up their wives and other family members and then went to Barry Blankenship's house for a cookout. The defendant became ill at the cookout, and he and his wife and small child went home between 6:00 p.m. and 7:00 p.m.

In his statement to the officers, the defendant described the events occurring thereafter and leading up to the killing of his wife as follows:

I laid down and took a nap. I got back up about fifteen to thirty minutes later. I went to the car and finished the other fifth off. . . . Then I went back inside the house.

No one was there except myself, wife, Sarah and daughter, one year old, Linda. I told my wife, Sarah, "I want my damn keys." She told me, "You ain't getting your damn keys. You're too drunk." Then I told her she was a hussy, and "I want my damn keys right now." She said, "You're too drunk. You're ain't getting your damn keys, you son-of-a-bitch." Then she went into the bedroom and I hollered at her again and told her, "I want my damn keys and I want them now." Then she said, "You're too drunk and you ain't getting your keys."

[T]hen I reached up and got the 30-30 rifle out of the gun rack. There were two other guns in the rack, a shot gun and a .22 rifle but I knew that they weren't loaded and I knowed that the 30-30 was loaded. At first, I had the gun pointed at the T.V. and cocked it with my thumb. Then I turned around and pointed the gun in her face and said, "I want my damn keys now."

I was about five feet from her. The barrel of the gun was about two feet from her, that is, when the gun went off. We were arguing about the keys because I wanted to go get some beer . . . because I knew the liquor store was closed by now.

Then I put the gun back in the rack, looked at my wife; turned off the T.V., got the baby and ran to my neighbor's house. I don't know his name. I told him that the baby was sick and asked him to take me to my daddy's house, and I would get my daddy to take the baby on to the doctor. I did not call the ambulance or sheriff or anyone else for help. I thought she was dead, but I wasn't sure.

We conclude that the foregoing statement by the defendant, if believed by the jury, was sufficient to support a verdict convicting him of first degree murder. If the jury believed the defend-

ant's statement, it would have been justified in finding, as he clearly admitted, that he shot his wife. Further, his statement would support a jury finding that he did so with the specific intent to kill her and with premeditation and deliberation.

We have often stated that premeditation and deliberation refer to processes of the mind and, therefore, must almost always be proved, if at all, by circumstantial evidence. *State v. Brown*, 315 N.C. 40, 337 S.E. 2d 808 (1985), *cert. denied*, 476 U.S. 1165, 90 L.Ed. 2d 733 (1986). Included among the circumstances to be considered in determining whether a killing was done with premeditation and deliberation are the conduct and statements of the defendant before and after the killing, threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, and ill-will or previous difficulty between the parties. *State v. Gladden*, 315 N.C. 398, 340 S.E. 2d 673, *cert. denied*, 479 U.S. 871, 93 L.Ed. 2d 166 (1986).

If the jury believed the defendant's statement, it reasonably could find that he intentionally selected a loaded high-powered rifle from his gun rack, rather than one of two unloaded firearms, because he "knew they weren't loaded and . . . that the 30-30 was loaded." While arguing with his wife because she would not give him his keys so that he could go to buy more alcoholic beverages, the defendant intentionally cocked the rifle with his thumb, pointed it at his wife's head at close range and shot her. He thought his wife was dead but he was not sure. Nevertheless, he made no attempt to determine whether she was dead or seek any assistance for her. Instead, he turned off his television and left the house taking his child with him.

The defendant's statement to the officers, taken in light of that part indicating that "the gun went off," would support a finding that, after the defendant intentionally selected and cocked the loaded rifle during the argument and intentionally pointed it at his wife's head at close range, it was discharged accidentally. The defendant's statement would, however, support an equally reasonable finding that the defendant intentionally shot his wife after premeditation and deliberation. Therefore, the defendant's statement to the officers was sufficient to support his conviction for first degree murder, and the trial court did not err in stating that

there was evidence "tending to show" that he had "confessed that he committed the crime charged in this case."

[4]   Further, we conclude that the trial court's instructions in this case did not amount to an expression of opinion that the defendant had in fact "confessed." In *Bray*, our Court of Appeals expressed the view that by using the terms "confessed" and "confession," the trial court had inadvertently conveyed an impression to the jury that the court was of the opinion that the evidence showed the defendant in fact "had 'confessed,' that he had admitted the truth of the charge against him." 37 N.C. App. at 46, 245 S.E. 2d at 192. We conclude, however, that those terms as used in the context of the instructions given in the present case did not amount to an expression of opinion by the trial court that the defendant in fact had confessed. The trial court's statement that there was evidence tending to show that the defendant had confessed was followed immediately in this case by the trial court's instruction: "Now, *if you find* that the defendant made that confession, *then* you should consider all the circumstances under which it was made in determining whether it was a truthful confession and the weight which you will give to it." (Emphasis added.) This instruction made it clear that, although there was evidence tending to show that the defendant had confessed, the trial court left it entirely for the jury to determine whether the evidence showed that the defendant in fact had confessed.

The pattern jury instruction concerning confessions, given by the trial court in this case, should be used with great caution. The instruction should not be given in cases in which the defendant has made a statement which is only of a generally inculpatory nature. When evidence is introduced which would support a finding that the defendant in fact has made a statement admitting his guilt of the crime charged, however, the instruction is properly given. For the foregoing reasons, we conclude that this was such a case and that the trial court did not err in instructing the jury in this regard.

We hold that the defendant received a fair trial free of prejudicial error.

No error.

Justice WEBB concurring.

I concur in the result. I continue to adhere, however, to the reasoning of my concurring opinion in *State v. Lane*, 77 N.C. App. 741, 746, 336 S.E. 2d 410, 412 (1985). For that reason I do not believe involuntary manslaughter is a lesser included offense of first degree murder and it was not error not to charge the jury on involuntary manslaughter.