STATE OF NORTH CAROLINA v. MORRIS CLEM PATTERSON

No. COA10-538

(Filed 1 March 2011)

## 1. Evidence— exhibit—chemical analysis of blood—expert testimony

The trial court did not commit plain error by admitting into evidence the results of the chemical analysis of defendant's blood and an expert's testimony based on those results. Defendant did not allege that the test, indicating that defendant had a blood alcohol concentration of 0.14 more than three hours after the accident, was improperly administered. The fact that three hours had passed went to the weight to be given to the test rather than its admissibility.

## 2. Motor Vehicles— driving while impaired—second-degree murder—felony serious injury by vehicle—legal impairment

The trial court did not err by denying defendant's motion to dismiss the charges of second-degree murder, felony serious injury by vehicle, and driving while impaired based on alleged insufficient evidence that defendant was legally impaired at any relevant time after driving. In addition to other evidence, the State showed that defendant was under the influence of an impairing substance at the time of the accident based on a chemical analysis of his blood, defendant admitted consuming as many as five or six beers, and defendant's speed exceeded 100 miles per hour, and defendant failed to use his brakes or make any attempt to avoid the collision.

Appeal by Defendant from judgments entered 31 July 2009 by Judge V. Bradford Long in Randolph County Superior Court. Heard in the Court of Appeals 3 November 2010.

*Attorney General Roy Cooper, by Assistant Attorney General William P. Hart, Jr., for the State.*

*Anne Bleyman for Defendant.*

STEPHENS, Judge.

## I. Procedural History

Defendant was indicted for second-degree murder, two counts of felony serious injury by vehicle, reckless driving, driving while license revoked, operation of motor vehicle without financial responsibility, and driving while impaired. The State dismissed the charge of operation of a motor vehicle without financial responsibility.

The case came on for trial during the 27 July 2009 Criminal Session of Randolph County Superior Court, the Honorable V. Bradford Long presiding. On 31 July 2009, the jury returned verdicts finding Defendant guilty of involuntary manslaughter, two counts of felony serious injury by vehicle, reckless driving, driving while license revoked, and driving while impaired. Defendant was sentenced to the following: three consecutive terms of 16 to 20 months in prison for the involuntary manslaughter and felony serious injury by vehicle convictions; 120 days in prison for the driving while license revoked conviction, to be served consecutive to the sentence for the second felony serious injury by vehicle conviction; and 60 days in prison for the reckless driving to endanger conviction, to be served consecutive to the sentence for the driving while license revoked conviction. Judge Long arrested judgment on the driving while impaired conviction.

Defendant appeals.

## II. Factual Background

The State's evidence at trial tended to show the following: At approximately 9:30 p.m. on 14 June 2007, Defendant Morris Clem Patterson was driving a burgundy BMW along State Highway 49 between Ramseur and Liberty, North Carolina when his vehicle collided with a minivan driven by Micaela Jaramillo Navarette, who was attempting to make a left turn across Defendant's lane of travel. Jeffrie Lynn Scotton, a passenger in the right front seat of Defendant's vehicle, died immediately from injuries sustained in the collision. Defendant and Roger Vinson Marsh, a passenger in the back seat of Defendant's vehicle, suffered significant injuries requiring hospitalization. Navarette also sustained significant injuries requiring hospitalization.

James L. Brown, an off duty emergency medical technician, was one of the first individuals to arrive at the accident scene. Brown immediately called 9-1-1 and approached the vehicles to assess the situation. Shortly thereafter, emergency personnel arrived, including Trooper William Anthony Dees of the State Highway Patrol; Dustin Brown, a firefighter with the Franklinville Fire Department; and Sabrina Elliott of Randolph County Emergency Medical Services ("EMS").

Dees testified that he observed Defendant lying beside the driver's side door of the BMW and approached him to ask what had happened. Defendant looked up and replied, "I wasn't driving." Dees detected an odor of alcohol coming from Defendant and observed that Defendant's eyes were bloodshot, which he testified is a possible sign of impairment. An unopened can of beer was in the passenger compartment of the vehicle and a case of unopened beer was in the trunk.

Brown, who helped stabilize Defendant with a cervical collar and a spine board, testified that he detected a heavy odor of alcohol coming from Defendant and heard Defendant repeatedly state, "I wasn't driving." Elliott, who transported Defendant and Marsh to Moses Cone Hospital, testified that Defendant was "combative," smelled of alcohol, and stated he had consumed five beers that day. Trooper Joshua Smith with the State Highway Patrol testified that, at approximately 12:44 a.m. on 15 June 2007, he directed hospital staff to take a sample of blood from Defendant with Defendant's consent. Smith detected a strong odor of alcohol from Defendant.

Special Agent Linda Farren, a chemical analyst with the State Bureau of Investigation, analyzed Defendant's blood sample and testified, without objection, that Defendant had a blood alcohol concentration ("BAC") of 0.14 at the time his blood was drawn. The results of the blood test were admitted into evidence without objection.

Paul L. Glover, branch head and research scientist for the Forensic Tests for Alcohol under the Department of Health and Human Services, was tendered without objection as an expert witness in blood alcohol testing, blood alcohol physiology, and blood alcohol pharmacology. Glover testified, without objection, that he performed retrograde extrapolation based on the blood test results, the time of the accident, the time the blood sample was drawn from Defendant, and the average value for the rate of elimination of alcohol from humans to estimate that Defendant had a BAC of 0.19 at the time of the accident.

Dees testified further that he observed no tire marks at the scene of the accident, indicating that Defendant had not applied his brakes before the collision. Brian Palmiter, also a trooper with the State Highway Patrol, was tendered without objection as an expert in accident reconstruction. He testified that, in his opinion, Defendant's vehicle was traveling at a speed of 103 miles per hour when it collided with the minivan. Similar testimony was offered by Marsh, who observed the speedometer in Defendant's vehicle at or above 100 miles per hour immediately before the collision and did not notice Defendant attempt to slow down or apply his brakes in reaction to the minivan turning ahead of him.

Defendant testified on his own behalf. According to Defendant, he had consumed some beer before 5:00 a.m. on 14 June 2007 and two to three beers between 3:00 p.m. and 6:00 p.m. that day. Defendant and Scotton were at the residence of Defendant's cousin when Scotton received a phone call indicating that dinner was ready for him at a residence in the Goldston Trailer Park. Defendant drove Scotton and Marsh, an acquaintance who asked for a ride, along Highway 49 in the direction of the Goldston Trailer Park. At a certain point, Defendant looked over at Scotton and then into his rearview mirror. When he looked forward again, he observed the minivan turning just ahead. According to Defendant's testimony, he did not feel impaired at the time, was traveling around 50 miles per hour, and slammed on his brakes the moment he noticed the minivan turn across his lane of travel.

### III. Discussion

#### A. Blood Alcohol Test Results

[1] Defendant first argues that the trial court committed plain error by admitting into evidence State's exhibit number 19, the results of the chemical analysis of Defendant's blood, and Mr. Glover's testimony based on the results. Specifically, Defendant argues that the probative value of the results and the testimony based on the results was substantially outweighed by undue prejudice. We disagree.

Ordinarily, a trial court's decision to admit or exclude evidence pursuant to N.C. Gen. Stat. § 8C-1, Rule 40[1] is reviewed for an abuse

---

1. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2009).

of discretion. *State v. Matheson*, 110 N.C. App. 577, 583, 430 S.E.2d 429, 432-33 (1993). However, Defendant failed to object to the evidence at trial and is thus limited to plain error review. N.C. R. App. P. 10(b)(2), (c)(4). "Reversal for plain error is only appropriate where the error is so fundamental that it undermines the fairness of the trial, or where it had a probable impact on the guilty verdict." *State v. Floyd*, 148 N.C. App. 290, 295, 558 S.E.2d 237, 240 (2002).

In order to prove Defendant committed the offense of driving while impaired, the State was required to prove beyond a reasonable doubt that Defendant was driving his vehicle on a State highway:

(1) While under the influence of an impairing substance; or

(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. The results of a chemical analysis shall be deemed sufficient evidence to prove a person's alcohol concentration; or

(3) With any amount of a Schedule I controlled substance, as listed in G.S. 90-89, or its metabolites in his blood or urine.

N.C. Gen. Stat. § 20-138.1(a) (2009).

Defendant argues that the blood sample taken from him approximately three hours after the accident was not taken "at any relevant time[,]" as required by N.C. Gen. Stat. § 20-138.1(a)(2) and, thus, was inadmissible. We disagree.

In *State v. George*, 77 N.C. App. 470, 336 S.E.2d 93 (1985), *appeal dismissed and disc. review denied*, 316 N.C. 197, 341 S.E.2d 581 (1986), defendant argued that a Breathalyzer test for alcohol content, administered three hours and forty five-minutes after driving, was not administered at a relevant time after driving and, thus, the result of the test was inadmissible. This Court held that the fact that more than three hours had passed from the time defendant operated the motor vehicle until the Breathalyzer test was administered goes to the weight to be given the result of the test, rather than to its admissibility. *Id.* at 473, 336 S.E.2d at 95. Accordingly, this Court held that the Breathalyzer evidence was properly admitted. *Id.*

Likewise, in *State v. Oldham*, 10 N.C. App. 172, 177 S.E.2d 769 (1970), defendant contended that it was error to admit the result of a blood alcohol test, indicating that defendant had a blood alcohol content of .16, administered approximately two hours and twelve minutes after he was involved in an automobile accident. Defendant con-

tended that the test was not timely made and, thus, was without probative value. Defendant admitted that the test was properly administered and there was ample evidence that defendant did not consume any alcohol between the time of the accident and the time the test was administered. This Court held that "[u]nder all the circumstances of this case[,] . . . the result of the test had probative value and was properly admitted into evidence." *Id.* at 173, 177 S.E.2d at 770.

As in *Oldham,* the evidence in this case tended to show that Defendant did not consume any alcohol between the time of the accident and the time the blood sample was drawn from Defendant, approximately three hours after the accident. Moreover, Defendant does not allege that the test, indicating that Defendant still had a BAC of .14 more than three hours after the accident, was improperly administered. Although Defendant asserts that " 'the potential rate of error increase[s] as time' " passes and that the State "makes no mention of other intervening events that could have compromised the blood sample during this over three hour period of time[,]" the fact that approximately three hours had passed from the time Defendant operated the motor vehicle until the blood test was given goes to the weight to be given the result of the test, rather than to its admissibility. *George,* 77 N.C. App. at 473, 336 S.E.2d at 95. Under all the circumstances of this case, we hold that the result of the test had probative value and the trial court did not err in admitting it into evidence.

Defendant cites this Court's unpublished opinion in *State v. Verdicanno,* No. COA99-1086 (N.C. App. April 18, 2000), to support his contention that "a delay of more than three hours renders a blood draw too remote in time to be admissible." Defendant misinterprets this Court's holding in that case.

In *Verdicanno,* the case was tried "solely on the basis of [the] appreciable impairment" prong of N.C. Gen. Stat. § 20-138.1, without reference to the .08 prong. *Verdicanno,* slip op. at 3. The trial court thus excluded as irrelevant the result of a blood alcohol test administered to defendant approximately three and a half hours after his arrest for suspected driving while impaired. This Court held that it was within the trial court's discretion to exclude the blood test evidence by weighing its slight probative value of defendant's appreciable impairment with its tendency to confuse the issues, and, thus, the trial court did not err in finding that "the long delay rendered the blood test too remote in time from defendant's arrest to be admissible." *Id.* at 6.

Unlike in *Verdicanno*, Defendant was not tried solely on the "appreciable impairment" prong of N.C. Gen. Stat. § 20-138.1(a), and Defendant's blood alcohol concentration at the time of the arrest was at issue. Accordingly, the blood test evidence was relevant to show Defendant's blood alcohol content. We conclude that the trial court did not err in admitting it into evidence.

Based on the test result indicating that Defendant had a BAC of .14 approximately three hours after the accident, Mr. Glover performed retrograde extrapolation and formed the opinion that Defendant's alcohol concentration was .19 at the time of the collision. Defendant argues that it was error to admit Mr. Glover's opinion testimony based on the "inadmissible laboratory report." However, in light of our holding that the trial court did not err in admitting the report, Defendant's argument is overruled.

### B. Motions to Dismiss

[2] Defendant next argues that the trial court erred in denying his motions to dismiss the charges of second-degree murder, felony serious injury by vehicle, and driving while impaired because there was insufficient evidence that Defendant was "legally impaired at any relevant time after [] driving." We disagree.

In evaluating a motion to dismiss for insufficiency of the evidence, the task of a reviewing court is to

> examine the evidence adduced at trial in the light most favorable to the State to determine if there is substantial evidence of every essential element of the crime. Evidence is "substantial" if a reasonable person would consider it sufficient to support the conclusion that the essential element exists.

*State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982). The question is "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation and quotation marks omitted). Evidence sufficient "to carry a case to the jury" must be more than a "mere scintilla" and must generally be "any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction[.]" *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (citation and quotation marks omitted). The court does not weigh the evidence and any discrepancies or contradictions in the evidence are to be resolved by the jury. *Id.* at 67, 296 S.E.2d at 652.

"Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation." *State v. Snyder*, 311 N.C. 391, 393, 317 S.E.2d 394, 395 (1984). Reckless conduct during the course of driving while impaired can fulfill the malice element necessary to sustain a conviction of second-degree murder. *Id.* at 394, 317 S.E.2d at 396.

Additionally, a person commits the offense of felony serious injury by vehicle if:

(1) The person unintentionally causes serious injury to another person,

(2) The person was engaged in the offense of impaired driving under [N.C. Gen. Stat. §] 20-138.1 or [N.C. Gen. Stat. §] 20-138.2,[2] and

(3) The commission of the offense in subdivision (2) of this subsection is the proximate cause of the serious injury.

N.C. Gen. Stat. § 20-141.4(a3) (2009).

Furthermore, as stated *supra*, a person commits the offense of driving while impaired if the person was driving his vehicle on a State highway:

(1) While under the influence of an impairing substance; or

(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more. . . .; or

(3) With any amount of a Schedule I controlled substance, as listed in [N.C. Gen. Stat. §] 90-89, or its metabolites in his blood or urine.

N.C. Gen. Stat. § 20-138.1(a).

At trial, the State presented the following evidence tending to show that Defendant was under the influence of an impairing substance at the time the accident occurred: Based on the chemical analysis of the blood taken from Defendant after the accident, Defendant had a BAC of 0.14 at a relevant time after driving. This result was further extrapolated through expert testimony to estimate that Defendant had a blood alcohol content of 0.19 at the time of the accident.

---

2. N.C. Gen. Stat. § 20-138.2 contains the elements of the offense of impaired driving in a commercial vehicle.

Additionally, Defendant admitted having consumed as many as five or six beers on the date of the accident. Four witnesses testified that they detected a strong odor of alcohol emanating from Defendant immediately following the accident. Evidence was also presented that Defendant had bloodshot eyes and was combative with emergency personnel immediately after the accident.

Finally, Defendant's speed exceeded 100 miles per hour and Defendant failed to use his brakes or make any attempt to avoid the collision.

We conclude that the foregoing evidence was abundantly sufficient to show that Defendant was under the influence of an impairing substance at the time of the accident. Accordingly, the trial court did not err in denying Defendant's motions to dismiss the charges of second-degree murder, felony serious injury by vehicle, and driving while impaired.

Defendant received a fair trial, free of error.

NO ERROR.

Judges STEELMAN and HUNTER, JR. concur.