IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-563

No. COA20-646

Filed 19 October 2021

Guilford County, Nos. 19 CRS 025493, -716926-27, -076677

STATE OF NORTH CAROLINA

v.

ALLEN ANTHONY CAMPBELL, Defendant.

Appeal by defendant from judgment entered 2 December 2019 by Judge Lora Christine Cubbage in Superior Court, Guilford County. Heard in the Court of Appeals 7 September 2021.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Thomas J. Campbell, for the State.*

*Anne Bleyman, for defendant-appellant.*

STROUD, Chief Judge.

¶ 1 Allen Anthony Campbell ("Defendant") appeals from a judgment entered upon jury verdicts finding him guilty of various traffic offenses. We agree with both Defendant and the State that the trial court's comments during jury selection deprived Defendant of a fair and impartial trial. Defendant is entitled to a new trial.

## I. Background

¶ 2 On 22 July 2019, in connection with events occurring on 7 June 2019,

Defendant was indicted with driving while license revoked, failure to heed light or siren, speeding, reckless driving to endanger, fictitious altered title or registration card, failure to wear a seat belt, fleeing to elude arrest, and attaining habitual felon status. Defendant's jury trial began on 18 November 2019 in Guilford Country Superior Court. During jury selection, the prosecutor questioned the whole panel of potential jurors:

> Do any of the 12 of you have such strong personal beliefs -- some folks call it "sitting in judgment" -- that they don't feel comfortable sitting and listening to the evidence in this case and rendering a verdict of either "guilty" or "not guilty" in this case? And that could be because of religious reasons or ethical reasons or moral reasons. Anybody have such strong beliefs?

In response, prospective juror Hairston raised his hand. After explaining that the jury's role is not "really judging a defendant" but, instead, "to determine whether the State has met its burden of proof[,]" the prosecutor inquired if juror Hairston would "still feel uncomfortable or . . . would be unable to perform the function of a juror in this case[.]" Juror Hairston said "yes" based on "religion[.]"

¶ 3 When the prosecutor moved to challenge juror Hairston for cause, the trial court interjected:

> THE COURT: Well, hold on. Let me question Mr. Hairston a little bit more. So, Mr. Hairston, you're saying that you don't think because of -- what religion are you?
>
> JUROR HAIRSTON: Non-denominational. A Baptist.

> THE COURT: So non-denomina[tional] Baptist, you don't think that you could sit here and listen to the facts of the case and decide whether you think this gentleman over here is "guilty" or "not guilty"?
>
> JUROR HAIRSTON: No, ma'am.
>
> THE COURT: Okay. I'm going -- we're going to excuse him for cause, but let me just say this, and especially to African Americans: Everyday we are in the newspaper stating we don't get fairness in the judicial system. Every single day. But none of us -- most African Americans do not want to serve on a jury. And 90 percent of the time, it's an African American defendant. So we walk off these juries and we leave open the opportunity for -- for juries to exist with no African American sitting on them, to give an African American defendant a fair trial. So we cannot keep complaining if we're going to be part of the problem. Now I grew up Baptist, too. And there's nothing about a Baptist background that says we can't listen to the evidence and decide whether this gentleman, sitting over at this table, was treated the way he was supposed to be treated and was given -- was charged the way he was supposed to be charged. But if your -- your non-denomina[tional] Baptist tells you you can't do that, you are now excused.

The jury was impaneled, and the trial proceeded.

¶ 4     After presentation of the evidence, the trial court dismissed the fictious altered title or registration card charge. On 21 November 2019, the jury returned verdicts finding Defendant not guilty of failure to wear a seat belt, and guilty of the remaining charges. Defendant pleaded guilty to attaining habitual felon status. The trial court

arrested the convictions for driving while license revoked and reckless driving, and sentenced Defendant to 86 to 116 months imprisonment. Defendant appeals.

## II.   Trial Court's Statements

¶ 5        Defendant argues he "was denied a fair trial in an atmosphere of judicial calm before an impartial judge and a jury with free will in violation of his rights." (Capitalization altered.)  Specifically, Defendant asserts his "due process rights to a fair trial were violated" because "he was tried by a judge with particular views on religion that intimidated the jurors from exercising their own beliefs" and "[t]he judge also gratuitously interjected race into the trial."  We agree.

## A. Preservation

¶ 6        Defendant acknowledges that he did not object to the trial court's statements during jury selection.  *See* N.C. R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). Defendant asserts his argument is preserved as a matter of law because the trial court violated North Carolina General Statute § 15-1222, which prohibits a trial judge from expressing "any opinion in the presence of the jury on any question of fact to be decided by the jury."  N.C. Gen. Stat. § 15A-1222 (2019); *see also State v. Young*, 324 N.C. 489, 494, 380 S.E.2d 94, 97 (1989) ("A defendant's failure to object to alleged

expressions of opinion by the trial court in violation [N.C. Gen. Stat. § 15A-1222 and N.C. Gen. Stat. § 15A-1232] does not preclude his raising the issue on appeal."). Alternatively, in the event this Court deems Defendant's argument was not preserved as a matter of law, Defendant asks this Court to invoke Rule 2 "to suspend the Rules and review the claim of the lack of an atmosphere of judicial calm to prevent the manifest injustice of allowing [Defendant] to be convicted in violation of his rights to a trial before an impartial judge and an unprejudiced jury."

¶ 7        Although the trial court's statements could be construed as opinions on the role African Americans play in the justice system or the teachings of a "Baptist background[,]" the opinions did not go to "fact[s] to be decided by the jury." N.C. Gen. Stat. § 15A-1222. As a result, a remaining vehicle for this Court to review Defendant's unpreserved argument is Appellate Rule 2:

> To prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions.

N.C. R. App. P. 2. "Rule 2 relates to the residual power of our appellate courts to consider, *in exceptional circumstances*, significant issues of importance in the public interest or to prevent injustice which appears manifest to the Court *and only in such instances*." *State v. Campbell*, 369 N.C. 599, 603, 799 S.E.2d 600, 602 (2017)

(emphasis in original) (citation omitted). Here, noting that "Defendant has sufficiently shown he is entitled to a new trial[,]" the State concedes "that this is one of the narrow circumstances in which it is appropriate for this Court to invoke Rule 2." We agree that this case presents an exceptional circumstance justifying the use of Rule 2. *See id.* As a result, in the exercise of our discretion, we suspend Rule 10(a)(1)'s preservation requirements under Rule 2 and review the merits of Defendant's argument. N.C. R. App. P. 2.

**B. Analysis**

¶ 8    Defendant argues he is entitled to a new trial because the trial court's statements "intimidated the jurors from exercising their beliefs, free will, or judgment throughout the remainder of jury selection and the trial" and "also surprisingly interjected race into this matter."[1]    The State concedes that the trial court's statements constitute structural error and Defendant is entitled to a new trial.

> Structural error is a rare form of constitutional error resulting from structural defects in the constitution of the trial mechanism which are so serious that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence.

---

[1] We note that the same trial judge made similar comments during jury selection in *State v. Farrior*, COA20-513, filed concurrently with this opinion. However, in *Farrior*, because we vacated the defendant's conviction based on insufficient evidence of the offense charged, we did not substantively address the trial court's comments.

*State v. Garcia*, 358 N.C. 382, 409, 597 S.E.2d 724, 744 (2004) (internal citations and quotation marks omitted). Structural "error[ ] is reversible per se." *Id.* The United States Supreme Court has identified six instances of structural error; this case implicates an instance of "a biased trial court judge[.]" *State v. Polke*, 361 N.C. 65, 73, 638 S.E.2d 189, 194 (2006) (citation omitted); *see also State v. Frink*, 158 N.C. App. 581, 587, 582 S.E.2d 617, 620 (2003) ("Structural error may arise by the absence of an impartial judge." (citation omitted)). A biased trial court judge is a structural error requiring a new trial because it is a "well-recognized rule that every person charged with a crime has a right to a trial before an impartial judge and an unprejudiced jury in an atmosphere of judicial calm." *State v. Cousin*, 292 N.C. 461, 462, 233 S.E.2d 554, 556 (1977) (citation omitted).

¶ 9    The trial court's open court comments encouraging juror participation were specifically directed at African Americans in the venire. These comments appear to reflect the trial court's desire that Defendant—who is African American—have a fair trial by virtue of a representative jury. But "the probable effect or influence upon the jury, and not the motive of the judge, determines whether the party whose right to a fair trial has been impaired is entitled to a new trial." *State v. Bryant*, 189 N.C. 112, 114, 126 S.E. 107, 108 (1925). Our Supreme Court has cautioned that

> [m]any decisions have warned that remarks made before
> prospective jurors must be engaged in with the greatest of
> care and that the judge must be careful not to make any

statement or suggestion likely to influence the decision of the jurors when called upon later to sit in a given case.

. . . .

". . . The judge should be the embodiment of even and exact justice. He should *at all times* be on the alert, lest, in an unguarded moment, something be incautiously said or done to shake the wavering balance, which, as a minister of justice, he is supposed, figuratively speaking, to hold in his hands. Every suitor is entitled by the law to have his cause considered with the 'cold neutrality of the impartial judge,' and the equally unbiased mind of a properly instructed jury. This right can neither be denied nor abridged."

*State v. Carriker*, 287 N.C. 530, 533–34, 215 S.E.2d 134, 137–38 (1975) (quoting *Withers v. Lane*, 144 N.C. 184, 56 S.E. 855 (1907)) (emphasis in original).

¶ 10      Further, courts have cautioned that irrelevant references to religion, race, and other immutable characteristics can impede a defendant's right to equal protection and due process. *See Miller v. State of N.C.*, 583 F.2d 701, 707 (4th Cir. 1978) ("One of the animating purposes of the equal protection clause of the fourteenth amendment, and a continuing principle of its jurisprudence, is the eradication of racial considerations from criminal proceedings." (citation omitted)); *see also United States v. Runyon*, 707 F.3d 475, 494 (4th Cir. 2013) ("The Supreme Court has long made clear that statements that are capable of inflaming jurors' racial or ethnic prejudices 'degrade the administration of justice.' Where such references are legally irrelevant, they violate a defendant's rights to due process and equal protection of the

laws . . . ." (citation omitted)). Here, the trial court's interjection of race and religion could have negatively influenced the jury selection process. After observing the trial court admonish prospective juror Hairston in an address to the entire venire, other potential jurors—especially African American jurors—would likely be reluctant to respond openly and frankly to questions during jury selection regarding their ability to be fair and neutral, particularly if their concerns arose from their religious beliefs. We hold the trial's statements constituted structural error and award Defendant a new trial.[2]

## III. Conclusion

Because the trial court's statements improperly injected race and religion into the voir dire and violated Defendant's right to a trial before an impartial jury, we vacate Defendant's conviction and remand for a new trial.

NEW TRIAL.

Judge Tyson concurs.

Judge Dillon dissents.

---

[2] Because we award Defendant a new trial, we need not address Defendant's argument that being sentenced as a habitual felon violated his rights to be free of cruel and unusual punishment. However, we note that Defendant's brief acknowledges that "this Court has previously upheld the statutory scheme against an identical challenge and raises this issue in brief to urge the Court to re-examine its prior holdings[.]"

DILLON, Judge, dissenting.

¶ 12     Defendant argues that he is entitled to a new trial based on comments made by the trial judge during jury selection ("voir dire") as she was excusing a potential juror from service. The potential juror, who is African American, stated that he could not sit on a jury based on his Baptist religion. Defendant is also African American. The trial judge, who is also African American, stated that she too was a Baptist and appeared skeptical of the juror's excuse, stating that there was nothing in her faith that prevented her from faithfully serving on a jury, but gave him the benefit of the doubt and excused him. However, as the trial judge was excusing the juror, she directed comments to the remaining African Americans in the jury pool, admonishing them as to their duty to serve and the importance of their willingness to serve to better ensure that African American defendants receive a fair trial.

¶ 13     The majority concludes that the trial judge's comments constituted *structural* error, thus requiring a new trial. I agree with the majority that, though the trial judge may have had good intentions in making her comments, some of her word choice was inappropriate. However, I disagree with the majority that Defendant is entitled to a new trial. I do not believe that the trial judge's comments amounted to *structural* error. In any event, even if her comments did constitute structural error, Defendant failed to preserve any "structural error" or other constitutional argument. And given the low likelihood that the trial judge's comments caused prejudice to Defendant, I would not invoke Appellate Rule 2 to reach the issue. Furthermore, to the extent that

the trial judge's comments constituted a non-constitutional error, I do not believe her comments amounted to reversible error. Accordingly, I dissent.

## 1. Analysis

### A. No *Structural* Error

¶ 14    Defendant argues the trial judge's comments during voir dire directed to potential African American jurors constituted *structural* error because they exhibited bias on her part. The State agrees with Defendant. However, I disagree that the comments constituted structural error. While her comments were inartful and some of her word choice was inappropriate, they do not rise to the level of structural error.

¶ 15    Constitutional errors, when preserved, are generally subject to harmless error analysis on appeal. However, our Supreme Court, quoting the United States Supreme Court, has held that certain constitutional errors rise to the level of "structural error" and are "reversible *per se*," without having to engage in any prejudice analysis:

> Structural error is a rare form of constitutional error . . . which [is] so serious that "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence."

*State v. Garcia*, 358 N.C. 382, 409, 597 S.E.2d 724, 744 (2004) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). Indeed, the United States Supreme Court differentiates *structural* error from other constitutional errors as follows:

> [T]he defining feature of a structural error is that it affects
> the framework within which the trial proceeds, rather than
> being simply an error in the trial process itself.

*Weaver v. Massachusetts*, \_\_\_ U.S. \_\_\_, \_\_\_, 137 S. Ct. 1899, 1907 (2017) (quotation

omitted).

¶ 16      Our Supreme Court and the United States Supreme Court have identified

those types of constitutional errors which rise to the level of structural error.  One

type of structural error, which Defendant states is the error in this case, occurs when

the trial is presided over by "a biased trial judge."  The case oft cited (and referenced

by both parties in their appellate briefs) for the proposition that a biased judge

constitutes *structural* error is *Tumey v. Ohio*, 273 U.S. 510 (1927).  In that case, the

Court stated that when the presiding judge "has a direct, personal, substantial,

pecuniary interest in reaching a conclusion against [the defendant] in his case," he

(the defendant) is *per se* denied due process.  *Id.* at 523.  The Court differentiated

such conflicts of interest from mere concerns over "matters of [the trial judge's]

kinship, personal bias, state policy, [and] remoteness of interest," stating that these

lesser concerns are not constitutional concerns, but rather are "matters merely of

legislative discretion."  *Id.* at 523.

¶ 17      Here, Defendant does not make any claim that the trial judge had any personal

interest in his case.  Rather, the crux of Defendant's argument is that the trial judge

made inappropriate comments during voir dire that may have caused prospective

jurors "from exercising their beliefs, free will, or judgment throughout the remainder of jury selection and the trial."

¶ 18     It may be true that a judge's comments that affect the impartiality of the jury may constitute error, even constitutional error. However, such comments do not constitute "structural error." That is, such comments are not *per se* reversible. Rather, there must be an analysis concerning the prejudice caused by the comments; whether it is the defendant's burden to show that the comments were prejudicial, or the State's burden to show that the comments were not prejudicial, beyond a reasonable doubt. Defendant cites *State v. Carter* for the proposition that the trial court must be careful in her comments to the jury, but even in that case our Supreme Court recognized that inappropriate comments by the judge are not *per se* reversible:

> The bare possibility, however, that an accused may have suffered prejudice from the conduct or language of the judge is not sufficient to overthrow an adverse verdict. The criterion for determining whether or not the trial judge deprived an accused of his right to a fair trial by improper comments or remarks in the hearing of the jury is the probable effect of the language upon the jury. In applying this test, the utterance of the judge is to be considered in the light of the circumstances under which it was made. This is so because a word is not a crystal, transparent and unchanged; it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.

*State v. Carter*, 233 N.C. 581, 583, 65 S.E.2d 9, 10-11 (1951) (cleaned up). In fact, neither Defendant nor the majority cite to any case for the proposition that the

comments of a trial judge which might influence the ability of the jury to remain impartial constitutes "structural" error. Just last year, our Supreme Court engaged in a *prejudicial error* analysis where the alleged error, involving the actions of a trial judge during voir dire, may have resulted in a racially biased jury. *State v. Crump*, 376 N.C. 375, 392, 851 S.E.2d 904, 917-18 (2020) (holding that "the trial court's restrictions on defendant's questioning during voir dire [about prospective juror's racial bias] were prejudicial").

## B. Waiver

¶ 19    In any event, Defendant waived his right to assert that the trial judge's comments constituted structural or other constitutional error. Our Supreme Court has recognized that "[s]tructural error, no less than other constitutional error, should be preserved at trial." *Garcia*, 358 N.C. at 410, 597 S.E.2d at 745. The United States Supreme Court also requires structural errors to be preserved for review on appeal. *Johnson v. United States*, 520 U.S. 461, 465-66 (1997).

¶ 20    Here, Defendant had the opportunity to object to the trial judge's comments and ask for a continuance, where a new jury pool would be available, but no objection was made. And Defendant has not articulated on appeal how manifest injustice would result by our Court refusing to invoke Rule 2 to consider his unpreserved constitutional arguments. There is no showing that the trial judge demonstrated any bias or expressed any bias about Defendant, or his case, or that any juror was biased

against Defendant by her comments. Further, I do not perceive the trial judge's comments as a means of coercing prospective jurors to be *dishonest* in their voir dire answers. Rather, she was admonishing just the opposite—for the jurors to be honest about whether their objection to sitting on the jury was truly based on a religious reason.

¶ 21 I note Defendant's contention that his argument concerning the trial judge's comments are otherwise preserved because the comments violated the statutory mandate codified in Section 15A-1222 of our General Statutes. This statute provides that the trial judge "may not express during any stage of the trial any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2019). I do not believe, however, that this statute has been implicated, as Defendant does not make any argument that the trial judge's comments had any relation to any question of fact that the jury was to decide in his case. Rather, her comments only concerned jury service and ensuring that African American defendants receive a fair trial.

## C. No Reversible Error

¶ 22 A trial judge has broad discretion in addressing potential jurors during voir dire to admonish them to be honest in their answers to questions. Though, I do agree with my colleagues that some of the word choice by the trial judge here was inappropriate.

¶ 23        First, the trial judge should not have directed comments to just the African Americans in the jury pool about the importance of jury service, but she should have directed her comments more generally to the jury pool as a whole.

¶ 24        Second, she should have been more careful in her word choice when she suggested that she was among those who felt that the judicial system is not fair to African American defendants, by stating: "Everyday *we* are in the newspaper stating we don't get fairness in the judicial system. Every single day. But none of *us* – most African Americans do not want to serve on a jury." (Emphasis added.)

¶ 25        Third, she should not have injected race by stating an irrelevant statistic that ninety percent (90%) of defendants are African Americans.

¶ 26        Assuming we were to reach Defendant's arguments concerning the trial judge's inappropriate comments, I do not see how the comments were prejudicial against Defendant. I do not see any likelihood that someone remained on the jury who abandoned his/her presumption that Defendant was innocent based on anything the trial judge said. The trial judge never made any comment suggesting that Defendant was guilty but rather that Defendant was entitled to jurors who could be fair in assessing the case against him. Also, I do not see any likelihood that her comments caused someone to be seated on the jury who was prejudiced against Defendant, who would have otherwise spoken up about his/her prejudice but for the trial judge's comments.

The trial judge's comments, taken at face value, admonished the African Americans in the jury pool to be honest in advising the attorneys about their ability to be fair and impartial in their service.

## II. Conclusion

Though the trial judge may have had good intentions, in my opinion she did cross the line in her word choice during voir dire. I do not believe, however, that her comments constituted structural error. Defendant's arguments, whether based on the constitution or on N.C. Gen. Stat. § 15A-1222, are not preserved; and her comments were not egregiously prejudicial *against* Defendant—if prejudicial against him at all—to warrant invocation of Rule 2 of our Rules of Appellate Procedure.

Accordingly, I conclude Defendant had a fair trial, free from reversible error. This includes the trial court's sentencing of Defendant as a habitual felon. My vote is NO ERROR.